| 65 | 201 |
| 95 | 437 |
| 65 | 201 |
| 111 | 513 |
| 113 | 250 |
| 65 | 201 |
| 142 | 83 |
| 65 | 201 |
| 143 | 521 |
| 65 | 201 |
| 144 | 658 |

# The City Council of Montgomery *v.* Hughes *et al.*

### *Action on Official Bond of City Clerk.*

1. *Construction of pleadings.*—All pleadings must be construed most strongly against the pleader, and when susceptible of two reasonable constructions, that construction will be adopted which is least beneficial to the pleader.

2. *Judicial notice of charter of municipal corporation.*—The courts are bound to take judicial notice of the charter of a municipal corporation, as a public statute, although it may not be pleaded, or given in evidence.

3. *Surety's liability for default of principal.*—The contract of a surety is strictly construed : the extent of his liability is that expressed in the instrument signed by him, or necessarily implied in the words used therein ; and when he becomes bound for the acts or defaults of an officer, public or private, whose term of office is fixed by law, or prescribed by charter, ordinance, or by-law, and such specific term is recited in the bond, subsequent general words will not enlarge the term, or the obligation of the surety.

4. *Term of office of city clerk of Montgomery.*—The charter of the city of

Montgomery provides for biennial elections of the city clerk, as of the mayor and aldermen ; and the provision for his continuance in office, in addition to that term, "until his successor is duly elected and qualified," is only intended to cover the reasonable time, varying with circumstances, which may be necessary to enable his successor to qualify.

5. *Same ; liability of sureties after expiration of term.*—In an action on the official bond of such city clerk, which was dated the 5th January, 1872, recited his election on the 4th December, 1871, and was conditioned for the faithful discharge of his official duties, the complaint averred that he entered into the office on the day of the date of the bond, "and continued to be and act as such clerk, under said bond, continuously thereafter until the 10th December, 1875 ; that he did not give, and was not required to give, during that period, any other official bond, and that no successor to him was elected and duly qualified until the 1st January, 1876." *Held*, that these averments, whether construed to mean that he was re-elected for an aditional term during the interval, or that no election was held during the intervening period, did not show a liability on the sureties after the expiration of the official term fixed by the charter.

APPEAL from the Circuit Court of Montgomery. Tried before the HON. JAMES Q. SMITH.

CLOPTON, HERBERT & CHAMBERS, for appellant.

D. S. TROY, and RICE & WILEY, *contra.*

BRICKELL, C. J.—This is an action upon a bond, executed by William B. Hughes, as principal, Josiah Morris, Eugene Beebe, and Ferrie Henshaw, as his sureties, in the penalty of twenty thousand dollars, payable to the city council of Montgomery, and bearing date the fifth day of January, 1872. The condition is expressed in these words : "The condition of the above obligation is such, that whereas the said W. B. Hughes was, on the fourth day of December, 1871, elected by the qualified voters of the city of Montgomery clerk of said city council, for the term of two years from said date : Now, if the said W. B. Hughes shall faithfully perform all the duties of said office of city clerk, according to the laws and ordinances of the city council, and in safety keep, and properly account for all moneys or papers, which, by virtue of said office, may come into his possession, then this obligation to be null and void ; otherwise, to remain in full force and effect." The second count of the complaint avers, that Hughes, on the day said bond was approved, entered on the office of clerk of the city council, and continued to be and act as such clerk, under said bond, continuously thereafter, until the 10th day of December, 1875 ; that he was not required to give, and did not during that period give, any other official bond ; "and that no successor to the said W. B. Hughes was ever elected and duly qualified, until, to-wit, January 1, 1876." Of the

breaches of the condition assigned, are the following : " That the said W. B. Hughes, while said city clerk, and while acting as such clerk under said bond, received as such clerk, . . . . during the year 1874, the sum of four thousand and four hundred and forty-six 87-100 dollars, and during the year 1875 the sum of two thousand one hundred and thirty-one 65-100 dollars ; all of said sums of money belonging to the said city of Montgomery, and for which said sums of money, neither the said W. B. Hughes, nor either of said defendants, has accounted or paid any part thereof, although often demanded so to do, " &c.   To this assignment the sureties demurred, and the court sustained the demurrer ; and this ruling of the court is the only error now assigned.

It is an established rule, that all pleadings must be construed most strongly against the pleader, who is presumed most favorably for himself to state the cause of complaint, or matter of defense ; and, as a consequence, when the pleading admits fairly of two constructions, the one least beneficial to him will be adopted.  The re-election of Hughes as clerk, upon the expiration of two years, and his subsequent continuance in office under that election, can scarcely be regarded as negatived by the averment, that a successor to him was not elected and qualified until January 1, 1876. He may have been his own successor, by a successive election on the expiration of the term to which the condition of the bond certainly refers.  Of the charter of the city, courts are bound to take notice, as a public statute, though it may not be pleaded, or given in evidence.—*Smoot v. Mayor*, 24 Ala. 112 ; *Case v. Mayor*, 30 Ala. 538.  When the bond was executed, and during the period it is averred Hughes continued in office, the charter of the city required a biennial election of the mayor, of the aldermen, and of the clerk of the common council ; fixing the day of such election, and providing : " The said mayor, clerk, and aldermen, shall hold their office until the next succeeding election after their election or appointment, and until their successors are duly elected and qualified. " Adopting a construction of the count, resting upon the presumption that Hughes continued in office, after the expiration of the first official term, by virtue of a re-election, would be more consistent with the rules of pleading, if that construction was less beneficial to the pleader, than a construction founded upon an intendment that the mandatory provisions of the charter had been disregarded by a failure to hold an election.  We do not propose, however, to rest our decision, in any measure, upon a rule of pleading which has not been invoked, and which may

not meet the actual facts, as the case has been very fully argued in either aspect in which the count may be supposed to present it.

A contract of suretyship is essentially a promise to answer for the debt, default, or miscarriage of another. The surety, though bound equally with the principal, stands in a purely voluntary and gratuitous relation. The extent of the liability incurred by him is that expressed, or necessarily included, in the words used in the contract or obligation. To the extent, in the manner, and under the circumstances stated in the contract, he is bound, and no further; and any variation or change of these, without his consent, operates his discharge, though he may sustain no injury, or it may be supposed would derive benefit. The contract is strictly construed, as to his liability, and cannot be extended *to any other person, or any other subject, or to or for any other period of time,* than such as may be included in its words. It is in this sense only we must understand the expressions, of such frequent use, that " there is no equity against a surety "; or, that " a surety has the right to stand upon the very terms of the contract "; " the contract of the surety must be strictly construed "; and other kindred expressions. The person accepting the suretyship has, in the inception of the contract, the power of expressing the measure and duration of its obligation; and it is his fault, or misfortune, if he has not included the state of facts to which he would extend it.—Burge on Suretyship, 40; *Miller v. Stewart,* 9 Wheat. 631.

When the contract expresses that the liability of a surety is to continue for a limited period, although, after its lapse, he may be sued, yet he is answerable only for the acts or defaults of the principal which had taken place before it had elapsed.—Burge on Suretyship, 69. There are no more frequent applications of this principle, than to the bonds of public officers, and of the officers of corporation, public or private, whose terms of office are fixed by law, or prescribed by the charter, ordinance, or by-laws of the corporation. When, in such bond, there is a recital of a specific term, corresponding to the defined official term, within which the official duty, for the performance of which the surety is answerable, is to be performed, it is a fixed rule of construction, that no subsequent general words will enlarge the term, the obligation of the bond, and the liability of the surety. Such general words are limited and restrained by the express, specific recital.

The oldest case, in which this rule of construction was adopted and applied to such bonds, is said to be the case of *Lord Arlington v. Merricke,* 2 Saunders, 403, before Lord

HALE. The bond recited, that Thomas Jenkins had been appointed deputy post-master *for the term of six months*; and was with condition for his good behavior, *during all the time that he, the said Thomas Jenkins, shall continue deputy post-master.* Jenkins continued in office for two years, or more, and made default; for which the surety was sued, at some time after the expiration of six months from his appointment, and the execution of the bond. It was held, the surety was not liable for the default, or for any thing happening after the first six months. The liability was sought to be deduced from the general words of the condition; but these were restrained and limited by the particular recital that Jenkins' appointment was for *the term of six months*; and speaking of the general words, the court said : "This time" (during all the time that he, the said Thomas Jenkins, shall continue deputy post-master), "which is indefinite· in itself, ought to be construed only for the said six months, for which the condition recites that Jenkins was appointed to be deputy post-master, and to which the condition relates." This case is, as we will hereafter show, a stronger one for the application of the principle, though we concur with the counsel for the appellant, that the condition of the bond ought to be read and construed in connection with the charter, and its provision that the clerk should continue in the office until a successor was elected and qualified.

The case of *Arlington v. Merricke* has been uniformly followed in England[*]; and of the numerous cases we refer now to no other than that of *Kitson v. Julian,* 30 Eng. Law & Eq. 326, in which Julian was appointed clerk to the Torquay Gas Company, and superintendent and inspector of the works of the company. The condition of the bond was, " that if the said E. B. Julian do and shall, from time to time, and at all times, *so long as he shall continue to hold the said office or employment,* duly, faithfully and punctually account for, and pay over," &c. The plea to an action for the breach of the bond was, that the appointment was for the term of twelve months, and no longer, and that the breach assigned occurred after the expiration of that period. The replication was, that Julian remained in office after the expiration of twelve months, with the assent of the surety, for a long period, and during such period committed the default ; to which, there was a demurrer, and it was sustained. Lord CAMPBELL thought the natural and grammatical construction of the bond was, that the liability of the surety continued after the expiration of the year for which the principal was appointed ; and such, he had no doubt, was the intention of the parties. But there was a series of decisions construing such general

language, from which he was not at liberty to depart.   And he said:   "Where there is a recital in the bond, of the limited time for which the principal is appointed, there is a number of express decisions, that the surety is no longer liable; and they seem to show that, where the term of appointment is not recited, it may be stated by averments in pleading what the limitation of the appointment was.   Here, there is a positive averment in the plea, that the appointment to the office and employment was for one year, and no longer; and there is a recital in the bond of the appointment having been made.   I do not like to introduce any nice distinctions between cases where the office or employment is recited generally, and where the term of office is specially mentioned.   If the recital of the particular period, for which the appointment is made, has the effect of relieving the surety from liability beyond that period, I think it better to hold it has the same effect where it is averred in pleading, though the fact of the appointment is recited generally."   The American authorities generally are in conformity to the English doctrine.   They are referred to in Brandt on Suretyship, §§ 138–146; Ang. & Ames Corp. § 322, and notes.

The rule of construction is adopted to meet and effectuate the intention of parties, who are not presumed to contemplate a liability for an indefinite term, when the words of the instrument are consistent with a liability for a limited, defined period.   In this case, the bond recites Hughes's election on the 4th day December, 1871,* for a term of two years from that time; and it is for his fidelity in office that the sureties stipulate.   It is impossible to read the bond without the conviction, that a liability for an undefined period—for a period which would be enlarged by the laches of the corporation in holding an election, which would be cause of *quo warranto* against the corporation—was, or could have been, in the contemplation of the parties.   There are not, in this obligation, as there were in *Arlington v. Merricke,* and *Kitson v. Julian,* any general words, from which, if they stood alone, unqualified, unrestrained by more particular words, an intention that the bond should be obligatory after the lapse of two years, can be deduced; and this renders the present case stronger than either of those cases, and many others usually referred to, in support of the rule of construction.

Nor can we suppose the legal effect of the condition is changed, by reading the bond as if the words of the charter had been inserted—that the clerk should remain in office for two years, and *until his successor was duly elected and qualified.* The same provision is applicable to the mayor, and to the

aldermen; and if it extended the official term of the clerk, to a service of years beyond the term of two years, definitely expressed, it would equally extend the term of the mayor, or of the aldermen, and a construction would be given to that clause of the charter, which would, in practice, annul and defeat the clearly expressed will of the legislature, that these official terms should not be of longer duration than two years. We are not without some experience, in this State, of the temptations such a construction offers defeated candidates for re-election to municipal offices, by vexatious litigation to prolong their official terms. The manifest object of the clause is, to prevent a misconstruction of the charter, possible if there was not express provision for the interval elapsing of necessity between an election and the qualification of the officer. This interval may vary in length, under particular circumstances; but it was never within the legislative contemplation, that, under this clause, an official term could be prolonged beyond a reasonable time for the newly elected officer to qualify. If for such time he failed to qualify, there would be a vacancy, to be filled as the charter directs. This is the whole scope of the clause; and so construing it, harmonizes the whole provision, and effects the intent of the legislature, that the term of office shall be of two years, and not of indefinite duration.—*Chelmsford Company v. Demarest*, 7 Gray, 111; *Dover v. Twombly*, 42 N. H. 59. And it harmonizes with the principle, that the obligation of a surety must be strictly construed, and must not be extended *a tempore ad tempus*—to any other period of time than is expressed, or necessarily included in its terms. The terms of the condition of an official bond, or of a statute, should be clear and explicit, to justify a construction which would indefinitely extend the liability of a surety, beyond the defined official term, or the official term itself. The fair and just presumption is, when the office is for a particular term, or a particular term is expressed in the obligation, that for such term only the surety intends to guaranty the fidelity of the principal. If beyond that period he continues in office, it must be presumed that a new bond has been taken; and if that is not the presumption, it can not be assumed that the liability of the former surety is continued and enlarged. Said Lord ELLENBOROUGH: "As the consequences of giving to the condition a more enlarged construction, so as to extend the responsibility beyond the current year, would be of so grievous and burdensome a nature, we think it requires more clear and certain words than are to be found in this instrument."—*Hassell v. Long*, 2 Maule & Selw. 363. All such general words as are found

[Bradshaw v. Emory.]

in the charter, importing that an officer remains in office, after the expiration of the defined term, until a successor is elected and qualified, are employed from abundant caution, to avoid a construction which would give rise to a sort of *interregnum,* or a vacancy, or lapse in the office, and not to create unlimited official terms.—*Commissioners v. Greenwood,* 1 Dess. 452; *Welch v. Seymour,* 28 Conn. 387; *Chlemsford Company v. Demarest, supra; Dover v. Twombly, supra.*

On the other aspect in which the count may be considered —that of admitting an election of Hughes after the expiration of the first official term—it is not necessary to dwell at length. A second election, of necessity, terminated the first in all respects.—*U. S. v. Kirkpatrick,* 9 Wheat. 720; *South Carolina Society v. Johnson,* 1 McCord, 41. There was an expiration of the first official term; and for a new term of office, commencing under another election, terminating the first term, there can be no reason to suppose it was intended the general words of the charter should be extended.

The demurrer to the particular breaches of the complaint was well taken, and properly sustained. The judgment is affirmed.