# Prowell *v.* The State *ex rel.* Hasty . *et al.*

### Proceedings in Quo Warranto.

1. *Term of office of Judge of Probate not effected by the General Election Law of 1903.*—The "Act to further regulate elections in the State of Alabama," approved October 9, 1903, (Acts 1903, p. 438), did not extend the terms of office of the Probate Judges then in office for an additional year; and under the provisions of said Act a Judge of Probate whose term of office commenced November 3, 1898, could not hold said office longer than a reasonable time after the expiration of his term of November 3, 1904, and until his successor was elected on November 8, 1904, could qualify.

APPEAL from the Circuit Court of Marengo County. Heard before the HON. JNO. T. LACKLAND.

The proceedings in this case were had upon an information in the nature of a *quo warranto* being filed by the State of Alabama on relation of Alonzo L. Hasty, and Alonzo L. Hasty, as an individual. The petition was addressed to the Judge of the 1st Judicial Circuit, and filed in the Circuit Court of Marengo County. It was averred in the petition that Alonzo L. Hasty was a resident of Marengo County, and that on the eighth day of November, 1904, he was duly elected Judge of Probate of Marengo County, Alabama, and was regularly declared to have been elected; that there was issued to him a com-

[Prowell v. The State *ex rel.* Hasty *et al.*]

mission as Probate Judge of Marengo County, which commission he held at the time of the filing of the information; that he had given bond, and had taken the oath of office prior to the filing of the information; that the appellant, Samuel P. Prowell, at the time of the filing of the information held and exercised the office of Probate Judge. The prayer of the petition was that a writ of *quo warranto* or other proper writ be issued, directing the said Samuel P. Prowell to show by what warrant or authority he holds and exercises the office of Probate Judge of Marengo County; that upon the hearing the respondent be excluded from said office, and that judgment be rendered declaring that the said Hasty was entitled to the office of Judge of Probate of said County.

The respondent demurred to the petition upon the following grounds: 1. Under the law the said Samuel P. Prowell was entitled to hold the office of Judge of Probate of Marengo County until the 3rd day of November, 1905. and that said Hasty was not entitled to assume said office until said date. 2. The allegations of the petition show on its face that the said Hasty was elected to the office of Judge of Probate of said County subsequent to the 3rd day of November, 1904, and could not qualify as such Judge of Probate until the 3rd day of November, 1905. These demurrers were overruled. Thereupon the respondent filed an answer, which was in words and figures as follows: "That on to-wit: the 1st Monday in August, 1898, the said respondent was duly and legally elected to the office of Judge of Probate of Marengo County, Alabama, and that thereafter he took the oath of office and executed, had approved and filed the bond required by law, and received a commission from the Governor and was on to-wit: the 3rd day of November. 1898, duly installed into the office of Judge of Probate of Marengo County, Alabama, for a term of six years, and until his successor was elected and qualified. That his successor has been elected, and was so elected on the 8th day of November, 1904. That his said successor, the said A. L. Hasty, cannot under the law, assume said office until the 3rd day of November, next after his election, which is the 3rd day of November, 1905,

6c

and that until the said 3rd day of November, 1905, he is entitled to hold said office." To this answer the petitioner demurred upon the following grounds: 1. Said answer shows that the respondent's term of office expired November 3rd, 1904. 2. Said answer shows that the respondent is holding said office unlawfully. 3. The said answer shows that Alonzo L. Hasty was entitled to said office upon his having been duly elected and qualified for the position. 4. The said answer shows no right or warrant in respondent to hold said office. This demurrer was sustained and the respondent declining to plead further the Court rendered a judgment holding that the said Alonzo L. Hasty was entitled to the office of the Judge of Probate of Marengo County, Alabama; that the respondent was unlawfully holding and exercising the duties of said office, and was intruding therein, and ordered and adjudged that the said respondent be ousted and excluded from said office. The respondent appeals and assigns as error the ruling of the trial court upon the pleadings, and the judgment of ouster.

J. M. MILLER and DE GRAFFENREID & EVANS, for appellant.

No counsel marked as appearing for appellee.

SIMPSON, J.—This was a proceeding in the nature of *"quo warranto"* under § 3420 of the Code of Alabama, brought by appellee, against appellant.

The demurrers, and argument of counsel, in connection with the petition and answer, show that Samuel P. Prowell was elected judge of the probate court of Marengo county at the general election in August, 1898, and that said A. L. Hasty was elected to the same office at the general election on the 8th day of November, 1904; and the question at issue is, that said Prowell claims that he is entitled to hold said office until November, 1905, while the relator, A. S. Hasty claims that, having been duly elected, and having been qualified and commissioned, by the Governor of Alabama, he is entitled to demand that said office be turned over to him.

The Constitution of 1875, which was in force when said Prowell went into office, provided that the probate judges should "hold office for the term of six years, and until their successors are elected, or appointed, and qualified." His term of six years expired on the 3rd day of November, 1904, and his successor has been elected, has qualified and been commissioned. But appellant claims that, inasmuch as sections 3054, and 3354, of the Code of Alabama, stand unrepealed, providing that probate judges, and other officers hold their terms for six years, from the 3rd day of November after their election, and until their successors are elected and qualified, said Hasty's term is necessarily until November, 1905, and said Prowell is entitled to hold the office, until that time.

We regard it as the settled law of this State that the words "until his successor is elected and qualified" was never intended to prolong the term of office beyond a reasonable time, after the election, to enable the newly elected officer to qualify.—*Hughes v. City Council of Montgomery,* 65 Ala. 201, 206-7; *Chelmsford v. Demarest,* 73 Mass. (7 Gray) 1.

As stated by Chief Justice BRICKELL, in the Hughes case, *supra,* after the expiration of such reasonable time, the office would become vacant. Consequently, if the law should be declared, as contended for by appellant, it would work no benefit to him. But, without stopping to consider what would be the result as to the relator in this proceeding, and, as the parties to this cause desire, and the interest of the public demand that the rights of the parties be fully decided, without regard to technicalities, we proceed to inquire, did the Legislature of Alabama, by the enactment of the "Act to further regulate elections in the State of Alabama," (Acts 1903, p. 438), intend to extend the terms of the probate judges, then in office, for a year, and to provide that the officers elected on Nov. 8th, 1904, should not enter upon the duties of office for a year after their election?

It would seem from the mere statement of the proposition, that if such a decided, not to say unusual change had been intended, the Legislature would certainly have

[Prowell v. The State *ex rel.* Hasty *et al.*]

expressed itself in apt terms, so that there could be no doubt as to its intentions.

The title of the act shows that it did not intend to change the term of office of any officer. With § 45 *of Art. IV.* of the Constitution before the Legislature, that body entitled this act, simply one "to further regulate elections." If such a general title could have been adopted as to provide this change without being obnoxious to the single subject provision the title adopted certainly did not advertise to the world that a law was about to be enacted which would have the effect of extending the terms of probate judges, who had been elected by the people for a definite term, for a year longer, and requiring the officers, who should be elected to succeed them, to wait a year in order that this gratuity might be enjoyed by the retiring officers; and that too, in spite of § 155 of the Constitution (both the old and new one being identical) that probate judges should hold for "six years and until their successors are elected and qualified" and providing that their right to hold for that term "shall not be affected by any change hereafter made in the mode or time of elections."

It is true that this provision relates specially to shortening the term of office. but the entire section shows a clear intenton, in the minds of the Constitution makers to fix the term of office, and, without a very clear expression to that effect, we will not presume that the Legislature intended to extend the term fixed by the Constitution for another year, when no reason has been suggested or can be imagined why such a thing should be done.

Section 158 of the Constitution further shows that a term should not be extended beyond the limit fixed by the Constitution, for it provides that, in case of a vacancy occurring, an appointment shall be made, and that the appointee shall "hold his office until the next general election." Under the construction of the law contended for by appellant if he had died a year before the election the person, appointed in his stead, could have held only until the next general election, and then there would have been a vacancy, of a year, with the man already elected by the people, prohibited by the very law of his

election, from assuming the duties of the office to which he had been elected.

"The law abhors vacancies in public offices, and great precautions are taken to avoid their occurrence."— Throop on Public Officers, § 308.

It has been decided by the New York court of appeals that, even where the constitution had left it to the legislature to fix the terms of judicial officers, and the legislature had fixed the term, it could not, constitutionally, extend the term of any officer, by act of the legislature. Judge FOLGER in delivering the opinion of that court, very pertinently says: "If the Legislature can, by extending the term of such an office, continue in it the holder thereof for one year, it may for any number of years; and thus the duration of the term thereof may be perpetuated by legislative power; and the people, after one exercise of the constitutional power of choosing certain of their officers, be, ever after, deprived of it."— *The People ex rel Fowler v. Bull* (46 N. Y.) 7. Am. Rep. 302, 306. And in our own court, Chief Justice BRICK-ELL, in the case of *Plowman v. Thornton*, 52 Ala. 567, sustains the action of the Convention, in extending the term of Judge SAFFOLD, beyond six years, because there was no government then, recognized by Congress, so that it devolved on the Convention to organize one, and he plainly intimates such an extension could not be made, by simply legislative action.

Unless some other time is fixed for the beginning of a term of office, the general presumption is that the official term dates from the legal ascertainment of the result of the election, and the officer assumes the duties of the office as soon thereafter as he can qualify and receive his commission.—*Atty. Gen. ex rel Haight v. Love*, 39 N. J. Law Rep. 476; Throop on Public Officers, § 314; Lawson's Rights & Remedies, § 3807.

While we think the language of this statute, shows plainly an intention simply to postpone the time of election and necessarily to postpone the induction into office for a few days, which would be covered by the reasonable time allowed under the expression "until his successor shall be elected and qualified," yet, if the law needed any

further interpretation, it is legitimate to take into con-
·sideration the history which led up to its enactment, the
surrounding circumstances and the ends intended to be
accomplished by the act.

When the Constitution of 1868, changed the time of
· general elections from August until November, in order
to prevent a vacancy, the interval was bridged over by
an ordinance of the Convention providing for an election
in February and also providing that the officers then
elected should hold office for the precribed term of years,
beginning from the day of the next general election,
after the admission of the state into the Union.

There followed the Act 1868, p. 271, § 7, fixing the first
Tuesday in November, 1868, (being November 3rd) as
the date of the general electon.

Then when the Constitution of 1875, returned to Au-
gust as the time for general elections, it was specially
provided, in the schedule (§ 3) that "all judicial offi-
cers elected   *   *   *   on the 3rd day of November,
1874   *   *   *   shall continue in office   *   *   *   until
their respective terms expire, as provided by the present
Constitution and laws of the State."

The act of 1876-7 p. 103, § 8, while providing for the
general election in August, also provided that the officers
elected should "not enter on the discharge of their duties
of their respective offices until after the first Tuesday
after the fourth Monday in November."

Then the Constitution of 1901, having returned to No-
vember as the time for general elections, provided, in its
schedule (§ 3) that "all   *   *   *   judicial officers   *
*   *   elected in August   *   *   *   continue in office,
and exercise the duties thereof until their respective
terms shall expire as provided by the Constitution of
1875, or the laws of this State."

Then the act of 1903 was enacted for the purpose of
conforming our election laws to this last Constitution.

The Constitution and laws, in existence at the time
of appellant's election in 1898, fixed the termination of
his term and the commencement of that of his successor,
at November, 1904. The Constitution of 1901, fixed the
same term, and specifically provides for the same to ter-
minate at the same time, which time in the previous

Constitution and laws had been fixed as the first Tuesday after the first Monday in November.

We hold that the legislative intent to preserve the terms of office, notwithstanding the changes in the time of holding the elections, is so clear, that the mere fact that two sections of the Code, which belong to the old system, when elections were held in August, have been left, without being specially repealed, cannot operate to defeat the plain purpose of the Constitution and laws as they now stand.

The act of 1903, p. 438, is a general revision of the election laws of the state. "It is an old and well defined rule of statutory construction that a subsequent statute, revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate a repeal of the former."—*Lemay v. Walker,* 62 Ala. 39, 40.

The judgment of the court is affirmed.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.