# *Ex Parte* State, *ex rel.* Attorney General.

### Quo Warranto.

(Decided November 27, 1916.  73 South. 101.)

1. **Judges; Selection; Legislative Control.**—The term and the manner of selection of the judges of the county law and equity courts are matters within the control of the legislature, since the judges are officers recognized by, but not creations of the Constitution.

2. **Statutes; Construction; Related Acts.**—Acts relating to the same matter, one abolishing the county law and equity court, and the other providing

[Ex Parte State, ex rel. Attorney General.]

for the salaries of judges, both being enacted by the same legislature, are to be read in pari materia.

3. **Judges; Term.**—The county law and equity courts of the state were abolished by Acts 1915, p. 279, with the provision that the same should take effect on Monday after the second Tuesday in January, 1917, and the further provision that the judges thereof should not be nominated or elected in the primary and general election of 1916, but the appropriation bill, Acts 1915, p. 935, provided compensation for the judges of the law and equity up to the Monday after the second Tuesday in January, 1917. Held, that the judge of the Morgan Law and Equity Court, although his six year term expired in November, 1916, was entitled to the office, and the exercise of his functions until the first Monday after the second Tuesday in January, 1917.

ORIGINAL petition in the Supreme Court.

Quo Warranto by the state on the relation of the Attorney General, addressed to the Honorable Thomas W. Wert, Judge of the Morgan Law and Equity Court, requiring him to show by what authority he exercised the powers and performed the functions of such judge, after November 10, 1916, and prior to the first Monday after the second Tuesday in January, 1917. Petition denied.

TENNIS TIDWELL, for appellant. E. W. GODBEY, for appellee.

McCLELLAN, J.—Quo warranto by the state of Alabama on the relation of the Attorney General, addressed to the Hon. Thomas W. Wert, requiring him to show upon what authority he is now exercising the powers and performing the functions of judge of the Morgan county law and equity court. By his voluntary answer thereto the respondent asserts that he rightfully occupies that office and is entitled to exercise its powers and perform its functions.

By the act approved February 25, 1907 (General Acts 1907, pp. 170-185), the Morgan county law and equity court was established. Section 2 of that act reads: "That as soon after the approval of this act by the Governor as practicable, the Governor shall appoint a judge for said court, whose term of office shall begin immediately upon his appointment and qualification, and continue until the general election in the year 1910, and until his successor is elected and qualified at the said general election in the year 1910, and every six years thereafter, a judge of said court shall be elected by the qualified electors of said county, whose term of office shall be for six years from the date of his election, and until his successor is elected and qualified. The

judge of said court so appointed and elected as herein provided, shall, before entering upon the duties of his office, take the oath of office required by law to be taken by the judges of the circuit courts of Alabama. The judge of said court, at the time of his appointment and election, shall have been a citizen of Morgan county, Alabama, for a period of one year next preceding his election, and shall be not less than twenty-one years of age, and shall be learned in the law."

By the act approved August 16, 1915 (General Acts 1915, pp. 279-280), the abolition of the Morgan county law and equity court was effected. The time when this act shall become operative is fixed by its section 5, which is as follows: "This act shall take effect on the first Monday after the second Tuesday in January, 1917, but as to the courts hereinabove abolished it shall become effective so as to preclude and prevent the nomination or election of judges, chancellors, or other officers connected with such abolished courts at the primary and general election in the year 1916, and this act shall authorize the nomination and election of judges of said circuit courts in 1916."

It thus appears that the act of 1915 does not effect the abolition of the Morgan county law and equity court, or of the other courts thereby abolished, until the first Monday after the second Tuesday in January, 1917. So, the Morgan county court is now and will continue to be until said time in existence to serve the purposes defined in the act of its creation. The further effect of section 5 was to repeal all provisions of the act creating the Morgan law and equity court which provided for the election of a judge of that court at the general election in the year 1916. It is also quite clear that the Legislature did not abolish the office of judge of the Morgan law and equity court by any enactment referable to those courts other than the act approved August 16, 1915.

This court in *Betts v. Ballentine,* 172 Ala. 325, 55 South. 814, decided that the act creating the law and equity court of Madison county (General Acts 1907, pp. 189-197), and not Code, § 1463, applied to determine when the judge of that court, who had been elected at the general election in 1910, was entitled to take office and to enter upon the discharge of the duties of judge of that court; he having prevailed in the election over the appointee of the Governor. The question there determined was necessarily subject to the controlling effect of the definition and interpreta-

tion given by this court, in the case of *City Council of Montgomrey v. Hughes,* 65 Ala. 201, to the expression "until his successor is elected and qualified;" the conclusion being that such provisions in enactments containing a provision for a definite term did not prolong the term of such officer beyond a reasonable time after the election or appointment of his successor, but that such a phrase is only intended to cover such reasonable time as will enable the successor to qualify after his election has been accomplished. In the *Hughes Case, supra,* it was said: "All such general words as are found in the charter, importing that an officer remains in office, after the expiration of the defined term, until a successor is elected and qualified, are employed from abundant caution, to avoid a construction which would give rise to a sort of interregnum, or a vacancy, or lapse in the office, and not to create unlimited official terms."

Since the Legislature, by section 5 of its act approved August 16, 1915, forbade the election, at the primary or general election of 1916, of any person to the then and now existing office of judge of the law and equity courts in this state, the phrase permitting the incumbent to continue in office until his successor should be elected and qualified was deprived of any possible effect or operation. So, the real question presented in this proceeding is, whether the term of Judge Wert, and of the other judicial officers likewise situated, terminated, absolutely, on November 7, 1916, the date the general election was held; or, to state the inquiry otherwise, whether the Legislature intended that the judicial officers of the class to which this respondent belongs should continue to serve in their respective capacities until the first Monday after the second Tuesday in January, 1917, at which time the law and equity courts over which they have presided and the offices they have been occupying pass out of existence in accordance with the act approved August 16, 1915.

(1-3) Both the term and manner of selection of the judicial officers of the character under consideration are matters within the control of the Legislature; they being offices recognized but not created by the Constitution.—*Betts v. Ballentine, supra.* It would have been within legislative competency, without offending any constitutional provision, for the Legislature of 1915 to have expressly enacted that the judges of the law and equity courts should continue to serve in their respective office until the first Monday after the second Tuesday in January, 1917. Did the

Legislature so intend, and accomplish the effectuation of that intention through legislation enacted by that body? The inquiry is one that must and does turn upon legislative intent. As has already been stated, the effect of the act approved August 16, 1915, was to continue the law and equity courts as existing tribunals within their spheres until the first Monday after the second Tuesday in January, 1917; and to give that act the single effect, before it became effective on the first Monday after the second Tuesday in January, 1917, of preventing the election of judges for such courts at the general election held on November 7, 1916. Having left these courts and these offices to continue their respective existences until the first Monday after the second. Tuesday in January, 1917, it is not reasonable to suppose that the lawmakers intended to leave them, for the comparatively short period elapsing, without judges and without occupants, respectively, to administer and to effectuate the powers and purposes the Legislature contemplated should survive until the first Monday after the second Tuesday in January, 1917. The legislative judgment evidently was that this period was too short to justify an election to provide administrators for these offices; and it is equally clear that the Legislature did not purpose the continuance of the courts and of the offices without the appropriate functionaries to give them direction and to vitalize their existing powers in the administration of justice. This is demonstrated when reference is had to the appropriation bill approved September 28, 1915, where the compensation for judges of the law and equity courts is expressly provided for "up to the first Monday after the second Tuesday in January, 1917."—See General Acts 1915, p. 935. The act approved August 16, 1915, and the pertinent provisions of the appropriation bill to which we have referred, both enacted by the same Legislature, are to be read in pari materia. When so considered, the provision of section 5 of the act approved August 16, 1915, preventing an election to select tenants for these judgeships at the election held on November 7, 1916, and the express appropriation for the compensation of judges during the period subsequent to the date of the general election of 1916, had the unavoidable effect to designate the judges holding these offices at the time their terms would otherwise have expired as the persons to fill them and to administer them until the date fixed for their abolition, viz. the first Monday after the second Tuesday in January, 1917. This

[Stewart v. Keller.]

was a simple, practical, and efficient method for avoiding an hiatus that, if permitted to intervene, would have left the law and equity courts completely inactive for two months, until the act approved August 16, 1915, becomes effective to transfer all pending causes to the records of the consolidated courts created by that act.

It results from these considerations that since the respondent was judge of the Morgan county law and equity court at the time of the termination of the six-year term upon which he entered in November, 1910, he has competently continued in that office up to this time and is and will be entitled to occupy it and to exercise its functions until the first Monday after the second Tuesday in January, 1917. His right to occupy the office in question and to exercise its powers and perform its functions up to the date stated being justified by the laws, the petition of the state of Alabama is due to be and it is hereby denied.

Writ denied.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, GARD-NER, and THOMAS, JJ., concur.