695 So.2d 1164 (1997)
Governor Fob JAMES, et al.
v.
Charles LANGFORD, et al.
Charles LANGFORD, et al.
v.
Governor Fob JAMES, et al.
Nos. 1960728, 1960797.
Supreme Court of Alabama.
May 30, 1997.
Champ Lyons, Jr., of Helmsing, Lyons, Sims & Leach, Mobile; and William P. Gray, Jr., Legal Advisor to the Governor, for Governor Fob James, Jr.
Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., for Phil Richardson; and David H. Marsh, Birmingham, for Albert McDonald.
Phillip E. Adams, Jr., of Walker, Hill, Adams, Umbach, Meadows & Walton, Opelika; William J. Baxley and Joel E. Dillard of Baxley, Dillard, Dauphin & McKnight, Birmingham; and George L. Beck, Jr., of Beck & Byrne, P.C., Montgomery, for Charles Langford, Robert Lowder, and James T. Tatum.
Joe Espy III of Melton, Espy, Williams & Hayes, P.C., Montgomery; and Robert D. Segall of Copeland, Franco, Screws & Gill, P.A., Montgomery, for Michael Figures (now *1165 deceased), W. H. Lindsey, and Hinton Mitchem, individually and in their official capacities as members of the Alabama Senate.

On Application for Rehearing
HOUSTON, Justice.
APPLICATION OVERRULED.
ALMON, SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and SEE, J., dissent.
MADDOX, J., recuses.
SEE, Justice (dissenting).
The Court should grant the application for rehearing to address whether Amendment No. 161 to the Constitution of Alabama vests unilateral power in the Governor or in the Senate to effectively reappoint an incumbent trustee of Auburn University by allowing indefinite holdover. Without comment on this issue, the majority overrules more than a century of precedent that requires incumbent trustees who have not been reappointed by both the Governor and the Senate to leave office within a reasonable time after their terms expire. I must respectfully dissent from the denial of the application for rehearing.

I. BACKGROUND
This case involves a battle between two incumbent trustees, on the one hand, and their proposed replacements, on the other. On May 9, 1997, this Court released an opinion holding that the replacement trustees did not validly hold office because, although they had been nominated by the Governor, they had not been confirmed by the Senate. The majority further held that the incumbent trustees whose terms had expired could hold over in office indefinitely. 695 So.2d at 1158. While I concurred with the majority's holding that the two replacement trustees could not serve absent their joint appointment by the Governor and the Senate, I dissented from the majority's holding that the incumbent trustees could hold over indefinitely without joint reappointment by the Governor and the Senate. Id. at 1162-63 (See, J., dissenting in part and concurring in part).
On May 16, 1997, the author of the majority opinion released a special concurrence to complete his rationale for disregarding a century of precedent. 695 So.2d at 1164 (Houston, J., concurring specially). Having his complete rationale available, I now respond. My response is threefold: First, a century of precedent compels the conclusion that the offices of the trustees at issue in this case are vacant. Second, the majority's attempt to distinguish this precedent fails. And third, a holding that vacancies in the offices arise from the absence of joint action by the Governor and the Senate would preserve the balance of power embodied in Amendment No. 161.

II. A CENTURY OF PRECEDENT
Amendment No. 161 to the Constitution of Alabama governs appointments to the Auburn University Board of Trustees. The framers of Amendment No. 161 deliberately chose to divide the power of appointment and reappointment between the Governor and the Senate. By dividing the appointment power, the framers sought to restrain the ambition of each branch to unilaterally select its favored incumbents to hold over in office indefinitely. To achieve this goal, the framers of Amendment No. 161 required both the Governor and the Senate to make all appointments that arise from the expiration of a term, and buttressed this joint appointment requirement with long-established language that limited an incumbent's holdover to a reasonable time:
"The trustees shall be appointed by the governor, by and with the advice and consent of the senate, and shall hold office for a term of twelve years, and until their successors shall be appointed and qualified."
Amendment No. 161, Ala. Const.1901.
In an unbroken line of cases, this Court has construed the phrase "and until their successors shall be appointed [or elected] and qualified" to allow an incumbent to hold over only for a reasonable time, after which the incumbent must vacate the office. For example, in City Council of Montgomery v. Hughes, 65 Ala. 201, 203 (1880), the Justices *1166 of this Court unanimously stated that the phrase "and until their successors are duly elected and qualified" required an incumbent officeholder to vacate the office within a reasonable time after the expiration of his term. In Prowell v. State, 142 Ala. 80, 83, 39 So. 164, 166 (1905), the Justices of this Court, again unanimously, stated: "We regard it as the settled law of this State that the words `until his successor is elected and qualified' [were] never intended to prolong the term of office beyond a reasonable time, after the election, to enable the newly elected officer to qualify." In State ex rel. Benefield v. Cottle, 254 Ala. 520, 521, 49 So.2d 224, 225 (1950), the Justices of this Court, citing Prowell, unanimously reiterated: "It is now the settled law of this state that the words `until his successor is elected and qualified' were never intended to prolong the term of office beyond a reasonable time...." In In re Kittle, 362 So.2d 1271, 1274 (Ala.1978), the Justices of this Court unanimously held that a vacancy was created when an appointee held over for more than a "reasonable time." And in Siegelman v. Folmar, 432 So.2d 1246, 1250 (Ala.1983), the Justices of this Court once again unanimously stated: "It is now the settled law of this state that the words `until his successor is elected and qualified' were never intended to prolong the term of office beyond a reasonable time...."[1]
The reason this Court, time and again, has rejected allowing appointed or elected incumbents to hold over indefinitely is clear: "We are not without some experience ... of the temptations that such a construction offers defeated candidates for re-election ... to prolong their official terms" by "vexatious litigation" or other means. Hughes, 65 Ala. at 207. To prevent such efforts to hold over (absent election or appointment as required by law) this Court provided: "If for [a reasonable] time [a successor] failed to qualify, there would be a vacancy, to be filled as the charter directs." Id. Accord State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477 (1901) (stating that if the Governor and the Senate cannot agree on the proper person to replace an incumbent university trustee, the office lies vacant). In short, if an incumbent is not required to vacate his office within a reasonable time after his term expires, the law providing for election or appointment to fill that office is dead letter. The framers were aware of the commanding reason embodied in this line of precedent when they drafted Amendment No. 161.

III. THE FOUR PREMISES
The holding that the prior trustees hold over indefinitely rests on four premises that attempt to distinguish the century of uniform precedent limiting holdover to a reasonable time. These premises, as expressed in the majority opinion and in the later-issued special concurrence, are: (1) that the precedents are limited to cases in which a newly elected official was ready to assume office; (2) that the holding in Kittle that an appointed officer must vacate within a reasonable time after the expiration of his term of office is "unbinding dicta"; (3) that the Kittle opinion did not cite or rely on the precedent that limited holdover to a reasonable time; and (4) that Kittle involved a statute, not the Constitution. As I demonstrate below, each of these premises fails.

A. THE PRECEDENT IS NOT LIMITED TO NEWLY ELECTED OFFICIALS
First, the majority attempts to distinguish more than a century of precedent requiring incumbents to vacate office after a reasonable time by stating that the precedent cited in my original special writing was limited to cases in which there had been an election that produced a successor to fill the office. 695 So.2d at 1160 n. 3. The precedent is not so limited.
In Cottle, 254 Ala. at 521, 49 So.2d at 224, this Court specifically rejected the argument that a prior officeholder had to vacate office only when a newly elected official was ready to assume that office. In Cottle, 254 Ala. at 521, 49 So.2d at 225, the relevant statute provided that a person appointed to complete the unexpired term of a constable "holds *1167 office for the unexpired term, and until his successor is elected and qualified." Id. Benefield was appointed to complete such an elected term. 254 Ala. at 521, 49 So.2d at 225. At the next election, no one, including Benefield, ran for the office. Nevertheless, Benefield held over as constable. This Court held that despite the absence of an elected official to fill the office of constable, the office became vacant after the expiration of a reasonable time. 254 Ala. at 521-22, 49 So.2d at 225.
Similarly, in Kittle, 362 So.2d at 1274, this Court held that the statutory language "and until their successors are appointed and qualified" required that a jury commissioner whose term had expired vacate his office within a reasonable time, even though no successor had been appointed.
The majority's first premise fails.

B. THE HOLDING IN KITTLE WAS NOT "UNBINDING DICTA"

Second, the special concurrence attempts to distinguish as "unbinding dicta" the century of precedent embodied in Kittle's holding that an appointed official must vacate office after a reasonable time. 695 So.2d at 1164 (Houston, J., concurring specially). It was not "unbinding dicta."
The issue in Kittle, 362 So.2d at 1272-73, was the validity of a criminal defendant's jury venire selected under the authority of a suspect jury commission. Two purported members attended the meetings of the three-member jury commission. Id. at 1274. One of the two had held over for 18 months after his specified term of office had expired. The other was a substitute for a duly appointed member. The Court held that the jury commission lacked a quorum to conduct business because the first member had held over for more than a reasonable time, thus leaving a vacancy, and because the substitute had never been appointed by the Governor. Id. This Court did not rest its judgment solely on its holding regarding the holdover commissioner or solely on its holding regarding the substitute commissioner. The Court's ultimate judgment rested on both holdings. Id. Therefore, neither holding was "unbinding dicta." Both were binding law.
The second premise fails.

C. KITTLE DID CITE AUTHORITY FOR THE APPLICATION OF THE PRECEDENT

Third, the special concurrence attempts to distinguish the century of precedent embodied in Kittle by stating that Kittle did not "cite any precedent for allowing the jury commissioners to hold over for a `reasonable time.'" 695 So.2d at 1164 (Houston, J., concurring specially). It did cite precedent.
In Kittle, 362 So.2d at 1274, this Court cited the "Report of the Attorney General,... April-June, 1943, p. 89," for the proposition that an old jury commissioner may hold over only for a "reasonable time." The attorney general's opinion cited therein expressly relies on "City Council of Montgomery v. Hughes, 65 Ala. 201 [(1880) and] Prowell v. State, 142 Ala. 80[, 39 So. 164 (1905)]," for the rule that an appointee may hold over for only a "reasonable time." Op. Atty. Gen. p. 89, 90 (Apr.-June 1943). Therefore, this Court in Kittle based its holding on the very precedent that the majority now disregards and on which I rely.
The third premise fails.

D. THE CONSTITUTION IS MORE IMPORTANT THAN A STATUTE
Fourth, the special concurrence attempts to distinguish the century of precedent embodied in Kittle by stating that Kittle "involved a statute ..., not the Constitution." 695 So.2d at 1164 (Houston, J., concurring specially). The special concurrence offers no explanation as to how this difference could support the majority's holding. That a claimant to a constitutional office, as opposed to an office created by statute, holds over without reappointment by both branches of government is of greater, not lesser, concern to the force of law and the balance of power.
The fourth premise fails.

IV. THE BALANCE OF POWER REQUIRES JOINT REAPPOINTMENT OR VACANCY
In Foster, 130 Ala. at 158, 30 So. at 478, this Court interpreted a constitutional provision[2] *1168 regarding the appointment of trustees for the University of Alabama exactly as it interpreted the appointment statute in Kittle. In Foster, 130 Ala. at 161, 30 So. at 479, this Court held that when the specified term of a trustee expired, only the joint action of the Governor and the Senate could effect the appointment to fill the next term.[3] The Court then stated that if the Governor and the Senate could not agree on who to appoint to the new term, the office would lie vacant. 130 Ala. at 160, 30 So. at 478.[4] To hold otherwise would eviscerate the requirement of joint action for appointment of a trustee after his initial term. 130 Ala. at 163, 30 So. at 480.[5] If the office did not lie vacant because indefinite holdover was permitted, either the Governor or the Senate could keep its favored incumbent in office simply by choosing not to appoint a replacement.[6] On the other hand, requiring an incumbent trustee to vacate the office after a reasonable time preserves the constitutional balance the framers struck between the Governor and the Senate.
In this case, which involves Auburn University, as in Foster, which involved the University of Alabama, one branch attempts to usurp the power to appoint a university trustee without acting in concert with the other branch. In this case though, unlike in Foster, the majority accedes to the usurpation by severing the joint appointment power into two separate and uncheckable reappointment powers by which either branch may convert the 12-year term of its favored incumbent into a continuing appointment with no termination date. Freed of the restraint of the joint appointment requirement, future governors and senates can seize this new reappointment power for their own unilateral political advantage.

V. CONCLUSION
A century of precedent dictates that because the Governor and the Senate have not reappointed the incumbents in this case, we must declare the offices of trustee vacant.[7] Such vacancies are essential to preserve the balance of power mandated by the joint appointment clause of Amendment No. 161 to the Constitution of Alabama. Because this balance of power requires reappointment by two branches of government, and not one, I dissent.
HOOPER, C.J., concurs.
NOTES
[1] See generally Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 26-30, 111 S.Ct. 1032, 1047-50, 113 L.Ed.2d 1 (1991) (Scalia, J., dissenting) ("[R]epeated judicial decisions for more than a century are to be received as the best exposition of what the law is ....") (quoting Day v. Woodworth, 13 How. 363, 371, 14 L.Ed. 181 (1852)).
[2] The constitutional provision in Foster, 130 Ala. at 158, 30 So. at 477, provided: "Said trustees shall be appointed by the Governor, by and with the advice and consent of the senate, and shall hold office for a term of six years, and until their successors shall be appointed and qualified."
[3] The Foster Court stated: "The power of appointment here conferred is not upon the Governor alone. It is plainly conferred upon him and the senate jointly." Foster, 130 Ala. at 161, 30 So. at 479.
[4] The Court stated:

"[I]n case of an irreconcilable disagreement between the senate and the Governor as to who is a fit and proper person to fill the office; a contingency not likely to arise, but should it happen, there would simply be, unfortunately, a casus omissus [i.e., a contingency for which no provision is made at law]. As under the Federal constitution, should the General Assembly refuse or fail to elect a senator, the State would be short one representative in Congress, a contingency which has happened, but which has not been regarded as being within the competency of the legislative branch of the government, or of the courts, to remedy."
Foster, 130 Ala. at 160, 30 So. at 478.
[5] The Foster Court rejected the contention that one branch could fill a vacancy on the board of trustees created by the expiration of the term, in part because such a holding would render the joint appointment clause functus officio (i.e., without further use after the initial appointment). Foster, 130 Ala. at 162, 30 So. at 479.
[6] The Governor could retain his favored incumbent by refusing to nominate a replacement. The Senate could retain its favored incumbent by refusing to confirm a replacement.
[7] The doctrine of stare decisis counsels that this Court not abandon over a century of precedent for this special case. I would adhere to the precedent in this case not simply because it is composed of cases that are "old," but because those cases address interests balanced by the Legislature and the framers which are directly applicable to the constitutional balance of power at issue in this case.