Today, we release another in a series of cases in which I, as a recently appointed Justice, have been called upon to cast the deciding vote. I concur in the opinion of Chief Justice Hooper; however, because my vote overrules a minister's plea of financial hardship in an arbitration proceeding involving his purchase of a used automobile, I am compelled to explain my position in this difficult area of the law. I do not choose to leave my views in this area vulnerable to the charges of either hypocrisy or insensitivity.
 I.
My vote implicitly embraces the United states Supreme Court's teachings on arbitration in Allied-Bruce Terminix Cos. v. Dobson,513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995),[5] and I write to address this question: Can a Justice on this Court, with intellectual honesty, accept Terminix and, at the same time, strenuously protest that the Tenth Amendment is being disregarded by the United states Supreme Court's use of the Fourteenth Amendment as the vehicle to regulate state action, on a theory of incorporation of the Bill of Rights of the United States Constitution that contradicts an objective weighing of historical evidence as to the intent of the framers of the amendment? I answer the question in the affirmative, for two reasons, one based upon the different source of federal constitutional authority at issue and the other based upon questions concerning the underlying Alabama constitutional guaranty of a remedy by arbitration for those who choose this alternative means of dispute resolution.
In Terminix, the Commerce Clause (Art. I, § 8) was the only aspect of the United states Constitution under consideration. The questions raised were whether Congress, in enacting the Federal Arbitration Act ("FAA"), intended the words "involving commerce"[6] to have the same meaning as the words "affecting commerce," and whether Congress intended the Act to apply in state courts as well as in federal courts. Our founding fathers were obviously convinced of the need "to regulate commerce . . . among the several states," because the Constitution expressly provides for Congress to do so.
The interpretation of the Scope of the power delegated to the United States by the Commerce Clause obviously affects the quantum of rights reserved to the states or to the people under the Tenth Amendment.[7] However, no one can argue in good faith that the power to regulate commerce was not within the range of the power "delegated to the United States by the Constitution," as that phrase is used in the Tenth Amendment in setting out that which is within the sovereignty of the United states.
Charges of abuse of power once conferred are fundamentally different from allegations of usurpation of' power. Mundane questions of statutory construction are simply not comparable to issues of extension of the Constitution into new territory by judicial fiat rather than through an amendment ratified by the people. No amount of hyperhole about the sacred right to trial by jury can escalate Terminix into a category beyond its status as a case involving construction by the United states Supreme Court of an act of Congress in a sphere where it undisputedly has the power to act. To be sure, the construction adopted in Terminix
gives teeth to arbitration agreements so that parties who contract away their right to a jury trial will now have to live with their bargain. If this result works a miscarriage of justice, the fault lies with the legislative body that enacted the FAA, and not with the judiciary.
 II.
What if one accepts that the decision in Terminix is an assault on fundamental rights? Does this conclusion require that we, as state court judges, whose oath is to the Constitution and the laws of the United *Page 42 
States enacted in pursuance thereof,[8] and not to the United States Supreme Court, must, in fidelity to discontent with judicial activism and to the strength of our own convictions, ignore the case in favor of the laws of the State of Alabama? But, if we do so, such inquiry into state law yields a mixed signal as to the acceptability of arbitration as an alternative means of dispute resolution. On the one hand, the Alabama Constitution of 1901 enshrines the right to trial by jury at § 11, but, on the other hand, at § 84, provides that "lilt shall be the duty of the legislature to pass such laws as may be necessary and proper to decide differences by arbitrators to be appointed by the parties who may choose that mode of adjustment." A provision empowering the legislature to pass laws to effectuate agreements to arbitrate has been a part of every Alabama Constitution since statehood. The legislature has discharged this duty by enacting Ala. Code 1975, § 6-6-1 et seq., to provide a system of arbitration parties may choose to avail themselves of after a dispute has arisen. However, the legislature also has exercised its power in this area by making predispute arbitration agreements unenforceable; see §8-1-41.
This Court has stated that § 84 is merely "directory," in a case challenging the provisions of now superseded statutes providing for umpires to fix the value of improvements upon redemption of real property. Stevenson v. King, 243 Ala. 551,10 So.2d 825 (1942). Moreover, early on this Court agreed with the legislature that predispute arbitration agreements are void on "public policy" grounds. See Bozemann v. Gilbert, 1 Ala. 90
(1840). Since then, the Court has continued to embrace a dichotomous public policy argument that encourages arbitration as a means of alternative dispute resolution, but disdains predispute arbitration agreements that would oust our courts of their jurisdiction. Wells v. Mobile County Bd. of Realtors,387 So.2d 140 (Ala. 1980).[9]
The Court's treatment of § 84 in Stevenson as "directory" is not accompanied by citation to authority. I note that, for purposes of construing the Constitution, the word "shall" is presumptively mandatory unless something in the character of the provision being construed requires that it be considered differently. Hornsby v. Sessions, 703 So.2d 932 (Ala. 1997). Section 84 specifies that "[it] shall be the duty of the legislature. . . ." (Emphasis added.) Moreover, the evils of transplanting the rules of construction that distinguish between mandatory and directory statutes into the realm of constitutional provisions have long been recognized. See Perry County v. Selma,M. M.R.R., 58 Ala. 546 (1877) (stating that such activity took a court into "dangerous ground," and citing Cooley,Constitutional Limitations). Perry County was cited with approval in Gafford v. Pemberton, 409 So.2d 1367 (Ala. 1982).
Has the legislature frustrated the will of the people, as set out in § 84, by enacting a law that is hostile to predispute arbitration? Or, has the legislature done what is "proper and necessary" by enacting § 6-6-1 et seq. as an alternative form of dispute resolution, while also enacting § 8-1-41 as a safeguard to the right to jury trial? If this Court is given the opportunity to address the implications of § 84 and, in doing so, determines that Stevenson incorrectly treats § 84 as directory, the Court will again be faced with the proper role ofstare decisis when a constitutional construction is found to be incorrect.[10] *Page 43 
These issues of state law are intriguing, but they are for another day. In the meantime, until Congress[11] should amend the FAA, I will continue to apply that Act to the cases coming before me; my application of the Act will be consistent with the principles of construction of the Act laid down by the Supreme Court of the United states, and I will apply the Act with a clear conscience on the issue of consistency with deeply held principles of constitutional law.
 III.
Turning to issues of' state law in the instant case, I do not find the plea of financial hardship in the area of arbitration to be totally irrelevant to the issue of enforceability of an arbitration agreement. The FAA, 9 U.S.C. § 2, expressly carves out a zone of primacy of state law by authorizing prohibition of enforcement of an arbitration clause that is invalid, "upon such grounds as exist at law or in equity for the revocation of any contract." Alabama has long recognized the doctrine of unconscionability as a defense to enforcement of a contract. See, e.g., Keeble v. Keeble, 85 Ala. 552, 5 So. 149
(1888). While Prima Paint Corp. v. Flood Conklin Mfg. Co.,388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), relegates challenges to the validity of the contract as a whole to the arbitrator, a challenge to the arbitration clause only is properly deter mined by the court. Wheat, First Securities, Inc.,v. Green, 993 F.2d 814 (11th Cir. 1993); Rhode v. E TInvestments, Inc., 6 F. Supp.2d 1322 (M.D.Ala. 1998); Rollins,Inc. v. Foster, 991 F. Supp. 1426, 1431 (M.D.Ala. 1998).
As noted by Judges Ira DeMent and Myron Thompson, respectively, in Rhode and Rollins, unconscionability, under general principles of Alabama law, can be reduced to a four-part test: (1) whether there is an absence of meaningful choice on one party's part; (2) whether the contractual terms are unreasonably unfavorable to one party; (3) whether there was unequal bargaining power between the parties; and (4) whether the contract contained oppressive, one-sided, or patently unfair terms. Layne v. Garner,612 So.2d 404, 408 (Ala. 1992).
I believe that a showing of financial hardship, lack of choice, and one-sidedness could, in a proper case, lead to a finding of unconscionability and a concomitant holding of unenforceability of an arbitration agreement that would not conflict with governing federal law. It is hornbook law that an arbitration agreement will not be enforced against one who has not agreed to arbitrate a dispute, A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358 (Ala. 1990), and lack of choice is an important factor in a finding that a contract is unconscionable. Layne v. Garner, supra. Because § 84 turns on the parties' making a choice in favor of arbitration, it would appear that application of the doctrine of unconscionability would not offend § 84. However, in the instant case, only one component, financial hardship, is implicated and, standing alone, that factor is simply insufficient to either displace, or to justify rewriting, the agreement between the parties.
[5] The parties have not suggested that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., is inapplicable.
[6] 9 U.S.C. § 2.
[7] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. amend. X.
[8] U.S. Const. art. VI.
[9] Kentucky has the same constitutional provision concerning arbitration that we have. The judge made "ouster of jurisdiction" doctrine that prevents arbitration of future disputes is not part of the fundamental police of Kentucky. Kodak Min. Co. v. CarrsFork Corp., 669 S.W.2d 917 (Ky. 1984), after remand, reviewdenied, 809 S.W.2d 699 (Ky. 1991).
[10] This Court recently confronted the issue in James v.Langford, 695 So.2d 1158, rehearing denied, 695 So.2d 1164
(Ala. 1997) (See, J., dissenting).
Justice Hugo L. Black believed strongly that stare decisis had no role in matters of constitutional error. In defending the Supreme Court's duty to strike down even long-standing misconstructions of the Constitution he stated:
 "That decision [striking down a century-old rule as unconstitutional] rested upon the sound principle that the rule of stare decisis cannot confer powers upon the courts which the inexorable command of the Constitution says they shall not have. State obedience to an unconstitutional assumption of power by the judicial branch of government, and inaction by the Congress, cannot amend the Constitution by creating and establishing a new `feature of our constitutional system.' No provision of the Constitution authorizes its amendment in this manner."
Gwin, White Prince, Inc. v. Henneford, 305 U.S. 434, 454-55,59 S.Ct. 325, 83 L.Ed. 272 (1939) (Black, J., dissenting).
[11] Under the reverse preemption of the McCarran-Ferguson,15 U.S.C. § 1011 et seq., state autonomy over matters of insurance is permitted. The Alabama legislature, if it saw fit, could, subject to § 84, restrict arbitration in insurance disputes without violating federal law. *Page 44