# Oberhaus *v.* State *ex rel.* McNamara.

## *Quo Warranto.*

(Decided May 30, 1911.   Rehearing denied June 23, 1911.
55 South. 898.)

1. *Courts; Jurisdiction; Quo Warranto.*—Construing Acts 1871-2, p. 109, and sections 3259, 3296, and 5455, Code 1907, it is held that the city court or Mobile had jurisdiction to grant a writ of quo warranto to determine title to the office of jury commissioner of Mobile County.

2. *Officers; Appointment; Expiration of Term.*—Where an officer's term would expire one day before the expiration of the term of office of the existing governor, the governor was authorized to fill the vacancy by appointment before the officer's term had, in fact, expired.

3. *Evidence; Judicial Notice.*—The courts will take judicial notice that the governor installed in 1907, was installed on January 15, and that his successor was inaugurated and installed on Monday, January 16, 1911, at 2:15 P. M.

4. *Time; Governor; Term of Office.*—Construing sections 115, 116 and 48, Constitution 1901, it is held that the legislature may count the votes on any day within seven days of their meeting, and that the governor's term expired at midnight on the first Monday after the second Tuesday in January, after the election of his successor, and that the incoming governor's term begins on the beginning of the third Tuesday in January after his election, notwithstanding the provision of section 1461 and 1570, Code 1907, and that the governor and other officers, are entitled to salary from the day on which they are inducted into office.

5. *Same; Jury Commissioners; Term.*—Under Acts 1909, p. 305, the jury commissioners appointed by the governor did not include any part, as to term of office, of the first Monday after the second Tuesday in January, 1911, and that since the term of the then governor did include that day, there was a vacancy in the office of jury commissioner which the then governor had power to fill by appointment.

APPEAL from Mobile City Court.

Heard before Hon. O. J. Semmes.

Quo warranto by the State on the relation of J. E. McNamara against A. Z. Oberhaus, to determine respondent's right to the office of jury commissioner of Mobile county. From a judgment granting the writ, respondent appeals. Reversed and remanded.

[Oberhaus v. State ex rel. McNamara.]

RICH & HAMILTON, for appellant. The main point of the controversy is the time for expiration of the defendant's first term as jury commissioner, and the point of beginning of Governor O'Neal's term as governor. We admit that if Comer's term had expired before the beginning of defendant's second term as jury commissioner, then Governor Comer had no authority to appoint. On the other hand, if Governor Comer's term extended beyond the beginning of defendant's term, he had full power to make the appointment.—66 S. W. 264; 43 N. E. 1103; 40 N. J. L. 468; 11 O. 46; 23 Am. Rep. 234; 49 N. E. 104; 19 S. W. 302; 23 A. & E. Enc. of Law, 347. Under the statute (Acts 1909, p. 305), appellant's term expired before the first Monday after the second Tuesday in January, 1911.—*Richardson v. The State,* 142 Ala. 12; *Beebe v. Robinson,* 64 Ala. 172; 72 Pac. 208; 21 N. E. 464; 91 N. Y. 630; 40 Ind. 16; 6 Ind. 335; 40 South. 571; 158 Ala. 458; 12 Ill. 302. Under all these authorities, the word "until" is excluded or used as a word of exclusion. Where the statute provides an appointment to be at the expiration of the preceding term, an appointment before its expiration or on the day of its expiration was good.—Meechum on Public Officers, Sec. 111; 63 Cal. 333. In the absence of anything in the context to the contrary, popular words are to be understood in their popular sense.—*Harrison v. The State,* 102 Ala. 172; *Montgomery B. B. Works v. Gaston,* 126 Ala. 446; *Hagan v. Comm. Ct.* 49 South. 419. The governor's term exists through Monday after the second Tuesday in January, the succeeding term beginning on the third Tuesday in January.—Section 116, Constitution 1901; Meechum on Public Offices, sec 391; *Best v. Polk,,* 18 Wall. 112; *Sheets v. Selden,* 2 Wall. 17; *Goode v. Webb,* 52 Ala. 452; *Cary v. The State,* 76 Ala. 78; *Prowell v. State ex rel,* 142 Ala. 83; *Lang v. Phillips,* 27 Ala. 313;

*Hall v. Streets,* 112 Mass. 27. This construction is rendered certain by the provisions of section 48, Constitution 1901, as under that provision the legislature may at any time, within seven consecutive days after their meeting canvass the vote and declare the election.— *Evans v. Job,* 8 Nev. 322. The Constitution being plain, it must be implicitly obeyed.—*State v. McGow,* 108 Ala. 166; *State v. Foster,* 130 Ala. 162. And this is true, notwithstanding the provisions of sections 1461, and 1570, Code 1907.—*Lehman v. Robinson,* 59 Ala. 241; *Sadler v. Langham,* 34 Ala. 311, and authorities next above.

Inge & McCorvey, for appelle and Robert C. Brickell, Attorney General, amicus cure. The court's action in sustaining the demurrer to the pleas of respondent was free from error.—*Montgomery v. The State,* 107 Ala. 372; *State v. Waldrop,* 158 Ala. 86; *Jackson v. The State,* 143 Ala. 145; *State v. Foster,* 130 Ala. 154; *Fox v. McDonald,* 101 Ala. 51. It is a well settled rule that an officer clothed with the power of appointment shall not forestall the rights and prerogatives of his successor by making an appointment to fill an anticipated vacancy in an office, the time of which cannot begin until after his own term and power to appoint have expired. 26 L. R. A. (N. S.) 514; 8 L. R. A. 228; 40 Pac. 538; 39 N. J. L. 14; 45 *Ib.* 189; 16 N. E. 384; 29 Cyc 1373; 23 A. & E. Enc. of Law, 347. Under the Acts and the Constitution, the term of the governor and of the respondent expired at the same time.—Acts 1909, 305; Sec. 116, Constitution 1901; *Mont. T. Co. v. Knabe,* 158 Ala. 458. This construction is further strengthened by a legislative interpretation as found in sections 1461, and 1570, Code 1907. The terms begin on the first Monday after the second Tuesday in January, after the election.

—6 Mayf. 684; *Lane v. Kolb,* 92 Ala. 636; *Vogel v. The State,* 8 N. E. 164; *Arnold v. U. S.,* 9 Cranch. 104; *Carlise v. Yoder,* 12 South. 255; *Evans v. Sanders,* 8 Port. 497. Under the Act, the governor appoints successors only upon the expiration of the term, and hence, Governor Comer was without power to make the appointment.—*Bownes v. Meehan,* 45 N. J. L. 189; *Jackson v. State, ex rel.,* 143 Ala. 145. The city court had jurisdiction to grant the writ.—*Capital C. W. W. Co. v. State, ex rel.,* 105 Ala. 406; *State, ex rel. Goodgame v. Matthews,* 153 Ala. 646; Acts 1871-2, p. 109; Sec. 3296, Code 1907; *Lee v. State, ex rel. Locke,* 49 Ala. 43; *Ex parte Campbell,* 130 Ala. 171.

SOMERVILLE, J.—The appellee filed a petition in the nature of quo warranto in the city court of Mobile charging that the appellant was unlawfully usurping the office of jury commissioner of Mobile county, and was exercising the powers and duties of that office without warrant or authority of law. In accordance with the prayer of the petition, an alternative writ was issued to the appellant requiring him to answer and show cause why he should not be ousted and excluded from said office. Demurrers to the answer made by respondent were sustained by the trial court, and, the respondent declining to plead further, a judgment of ouster was rendered against him from which he appeals. The respondent's answer denies that he is usurping or unlawfully holding said office, and in support of his right thereto he sets out the following facts:

Under the act of August 31, 1909 (Laws 1909, p. 305), he was on November 12, 1909, duly and legally appointed as jury commissioner of Mobile county by Gov. B. B. Comer, his term of office being "till the first Monday after the second Tuesday in January, 1911."

[Oberhaus v. State ex rel. McNamara.]

On January 9, 1911, while still serving under this appointment, he was again duly appointed as jury commissioner of Mobile county for a term of three years from the expiration of his first term, as his own successor in said office. Immediately after his said last appointment, and prior to January 16, 1911, respondent duly qualified as such commissioner, as required by law, and has throughout his said first term and continuously since January 16, 1911, claimed to be and is a member of the jury commission of Mobile county, and has rightfully discharged the duties of said office, for which he possesses all the legal qualifications. On Monday, January 16, 1911, at 2:15 o'clock p. m., Emmet O'Neal, who had been previously elected Governor of Alabama for a period of four years from the first Monday after the second Tuesday in January, 1911, took the oath of office as Governor, and duly qualified as such.

The answer contains other matter, but the facts above recited are all that are material to a determination of the question as to respondent's right to the office of jury commissioner. The determination of the main question obviously depends upon (1) when the official term of Gov. Comer expired; (2) when the official term of Gov. O'Neal began; (3) when the term of the respondent as jury commissioner under his first appointment expired; (4) whether it expired during and before the expiration of Gov. Comer's term; (5) whether, if it did so expire, Gov. Comer could exercise the power of appointing his successor, as conferred on the Governor by section 1 of the act of August 31, 1909; and (6) if Gov. Comer could have so appointed respondent on Monday, January 16, 1911, after the expiration of respondent's original term, whether he might exercise the appointing power a week in advance of its expiration, in anticipation of that event.

The point is made by respondent's counsel on this appeal that the city court of Mobile was without jurisdiction to hear the petition or render judgment thereon. We now proceed to state our views and conclusions with respect to the several questions presented for our consideration.

1.　There is no merit in the objection to the jurisdiction of the city court of Mobile.　Section 5455, Code 1907, provides, it is true, that "such action must be brought in the circuit court of the county in which the acts are done or suffered, or　*　*　*　in the circuit court of the county in which the corporation has its principal office," etc.　The caption of the statute, which first appears as section 3422, Code 1896, is "In what county action to be brought," and indicates that the statute was intended merely to fix the venue, and not at all to restrict the jurisdiction to the circuit court eo nomine.

Secion 2 of Sess. Acts 1871-72, p. 109, confers on the city court of Mobile "jurisdiction in civil causes (except in actions to try title to land)," as well as "all powers of a civil nature now exercised by the circuit courts of the state and the judges thereof"; and section 1 of Sess. Acts 1888-89, p. 210, with an exception not here material, confirms this jurisdiction and these powers.

Section 3296, Code 1907, is: "Unless otherwise provided by law, the city courts and judges thereof have and exercise all the jurisdiction and powers of the circuit court and the judges thereof; and, when invested with equity jurisdiction, have and exercise all the jurisdiction and powers of the chancery court and chancellors."　Section 3259, Code 1907, subd. 1, gives the circuit judges authority "to grant writs of certiorari, supersedeas, quo warranto, mandamus, and all other remedial and original writs which are grantable by judges at common law."

It is difficult to see how language could be more aptly chosen to comprehend and express the legislative intent to give to all city courts and judges jurisdiction and powers concurrent and coextensive with those of circuit courts and judges; and we hold that, whether under the special acts referred to, or under sections 3296 and 3259 of the Code, the city court of Mobile has jurisdiction of this proceeding. If authority were needed, we think the following cases are in point: *Tenn. M. B. & L. Ass'n. v. State,* 99 Ala. 197, 13 South. 687; *McDonald v. State,* 143 Ala. 101, 39 South. 257; *Lee v. State, ex rel. Locke,* 49 Ala. 43.

The case of *Moog v. Doe,* 145 Ala. 568, 40 South. 390, relied on by appellant, must be regarded as sui generis, and its operation limited to the special proceeding and statutes there dealt with, which, we think, clearly distinguish it from the present case. One essential difference is that a motion to sell land levied on in a justice court (as in the *Moog Case*) is not a civil action, and is strictly and purely statutory; while our statutory quo warranto is a civil action (*State ex rel. Goodgame v. Matthews,* 153 Ala. 646, 45 South. 307), and but a legislative substitute for its common-law prototype, with which it substantially accords (*Harris v. Elliott,* 117 Ala. 150, 23 South. 124), and by the general principles of which it is governed. Another feature of the *Moog Case,* apparently decisive of the conclusion reached, was the express mandate of the statute requiring the justice to return the papers to the clerk of the circuit court, this being the only means by which jurisdiction of the motion to sell was given or could be acquired.—*Johnson v. Dismukes,* 104 Ala. 520, 16 South. 424.

2. By section 116 of the Constitution of 1901 (Criminal Code, p. 92), it is provided that the Governor and other officers named shall hold their offices "for the

term of four years from the first Monday after the second Tuesday in January next succeeding their election, and until their successors shall be elected and qualified." It is evident that the term here prescribed must occasionally, by reason of the varying calendar position of the particular Monday indicated, be less than four years in duration. Hence the prescription of four years must be regarded as general only, and as controlled by the particular date mentioned as the beginning of each successive term. It is also evident that, for the same reason, the term between the two particular Mondays that mark the beginning and end of the term will sometimes be more than four years in duration. In such case the incumbent's term nevertheless runs until his successor "shall be elected and qualified."

Gov. Comer was inaugurated and installed in office, as we judicially know, on Monday, January 15, 1907; and Gov. O'Neal on Monday, January 16, 1911, at 2:15 o'clock, p. m. this being in each case "the first Monday after the second Tuesday in January next succeeding their election."·

Whether the term of each incoming Governor includes this "first Monday after the second Tuesday," or whether this Monday is a part of, and the last day of, the term of the outgoing Governor, depends of course on the meaning to be given the word "from" as used in section 116 of the Constitution in the phrase *"from the first Monday,"* etc.

A review of the scores of English and American cases which have during the last 150 years undertaken to give judicial definitions of this and similar words well demonstrates the futility, if not the folly, of the attempt to prescribe a constant and uniform meaning for a word which in itself, and in popular use, is not thus restricted. The opinion of Lord Mansfield in *Pugh v.*

*Duke of Leeds,* 2 Cowper, 714, decided in the year 1777, throws a curious light upon the vacillations of the earlier cases between technical construction and reason. Referring to one of these cases (*Hatter v. Ash,* 1 Ld. *Raymond,* 84), involving a lease which ran *"from* the date of the indenture," he says: "After several arguments, Treby, Chief Justice, at first, from the strength of reason, was for supporting the lease; and then, staggered by the weight of authorities, changed his opinion. But when the judgment was given, he absented himself. Powell, Junior, Justice, at first followed the authorities; but afterwards came over to reason; and at last it was agreed, by Neville and the two Powells, that 'from the date' ought to be construed *inclusive,* and, therefore, that the lease was good."

Still earlier, the cases had settled upon the construction that "from" was always *exclusive.* "So it seems to have stood down to 24 Car. 1. At that time," quaintly observed the great jurist, "mankind began to revolt against such a doctrine." Lord Mansfield's own views are expressed in the following passages from his opinion: "In grammatical strictness, and in the nicest propriety of speech that the English language admits of, the sense of the word 'from' must always depend upon the context and subject-matter, whether it shall be construed inclusive or exclusive of the terminus a quo. And whilst the gentlemen at the bar were arguing this case, a hundred instances and more occurred to me, both in verse and prose, where it is used both inclusively and exclusively." And, in conclusion, "The ground of the opinion and judgment which I now deliver is, that 'from' may in the vulgar use, and even in the strict propriety of language, mean either inclusive or exclusive; that the parties necessarily understood and used it in that sense which made their deed effectual; that courts

of justice are to construe the words of parties so as to effectuate their deeds and not to destroy them, more especially where the words themselves abstractedly may admit of either meaning." The ruling was that "from the date" meant the same as "from the day," and included the day of the execution of the lease.

It may well be doubted if the numerous judicial discussions of the subject since that time have added anything of value to the wise views of Lord Mansfield. Some courts have slavishly and unreasoningly followed the view that the word is always one of exclusion; while perhaps an equal number have more wisely held, where context, or popular usage or custom, so indicated, that it was inclusive. Many cases will be found collected in 4 Words & Phrases, pp. 2983-2986; and in a very comprehensive case note to *Halbert v. Live Stock Ass'n*, 49 L. R. A. 193, the entire subject of the computation of time is exhaustively treated. In this note the author, by way of general summary, says of the rule which excludes the first day and includes the last: "This rule, however, is subject to many exceptions, growing out of the language of the provisions for the period of time to be computed, and arising from peculiar facts and circumstances of the particular cases to which the rule is sought to be applied. And the question as to which of the first and last and last days of a period of time shall be included in the computation, and which shall be excluded, has not only given rise to much conflict of authority, but has also been determined differently and on different theories in different periods and jurisdictions; and this question, like the general one of inclusion of one day and exclusion of the other, has been variously decided with a view to the language of the particular provision for the period to be computed, and the peculiar facts and circumstances surrounding

[Oberhaus v. State ex rel. McNamara.]

the particular case with reference to which the computation is to be made."

Where a statute fixes the time within which an act is to be done, section 11 of the Code provides that the first day shall be excluded and the last day included. This is in accord with the general law of the subject, which is that whenever the question is merely as to the computation of time the terminus a quo is excluded. 28 A. & E. Ency. Law, 215. This is especially true in commercial transactions.—*Bradley v. Northern Bank,* 60 Ala. 252; *Doyle v. Bank,* 131 Ala. 294, 30 South. 880, 90 Am. St. Rep. 41. The general rule undoubtedly grew out of the disposition of courts to avoid forfeitures against those who must act within a given time or lose their rights, by indulging them to the furthest time possible.

This court has held that a lease "for the term of one year *from* the 1st day of November, 1872, *to* the 1st day of November, 1873," excluded November 1, 1872, and included November 1, 1873.—*Goode v. Webb,* 52 Ala. 453. In that case, however, the court recognized the rule stated by Lord Mansfield that intention, when clearly apparent, must govern in every case, and the decision of the point was based on the general rule for computing time, and the absence of anything to show an inclusive intent; and we apprehend that if it had appeared that by common usage or acceptation leases began *on* November 1st in that community, "from" would have been held to be inclusive instead of exclusive, and "to" exclusive instead of inclusive.

In what we have said above, it is not our intention to unsettle the general rules which have been adopted by courts for the computation of time, nor to deny the propriety of the rule that "from" is prima facie exclusive of the terminus a quo; but rather to illustrate the un-

wisdom of the attempt to apply these rules to all cases indiscriminately.

Our conclusion with respect to section 116 of the Constitution is that "from the first Monday," as applied to a term of public office, though prima facie exclusive of Monday, might, agreeably to ordinary usage, be either inclusive or exclusive of that day, according to circumstances. Of the only two reported cases we find in point, *Best v. Polk,* 85 U. S. 112, 21 L. Ed. 805, holds "from" in this connection to be exclusive; while *Vogel v. State ex rel. Rand,* 107 Ind. 374, 8 N. E. 164, holds it to be inclusive. In *Best v. Polk* the only reason given is the general rule; and in *Vogel v. State,* while the general rule is recognized, it is said that the circumstances and reason of particular cases may remove them from the operation of the rule. We cite these cases only to show the inherent ambiguity in the meaning of "from," considered per se. We note, however, that both Mechem and Throop lay it down as a rule that where a term of office runs from a certain date the day of the date is excluded.—Mechem on Public Officers, § 386; Throop on Public Officers, § 315.

We do not regard the cases of *Cary v. State,* 76 Ala. 78, and *Prowell v. State ex rel. Hasty,* 142 Ala. 80, 39 South. 164, cited by appellant, as decisions on this point at all, since the exact duration of the official terms there considered was not in issue, and the termini were referred to with evident generality and inexactness.

Turning, now, to other sources for light, it is insisted for appellant that sections 48 and 115 of the Constitution unmistakably show that the particular Monday mentioned in section 116 was regarded as belonging to the term of the outgoing Governor. Section 48 provides that the Legislature shall meet on the second Tuesday in January next succeeding their election; and section

115 provides that the returns of every election for Governor and other State officers shall be transmitted to the Speaker of the House, "who shall *during the first week* of the session at which such returns shall be made, open and publish them," etc. The argument is that the "week" allowed for opening and publishing the returns, and declaring the result of the election, means, and can only mean, seven consecutive days, and hence they might properly be done as late as the Monday following the meeting of the Legislature, which is of course wholly inconsistent with the notion that the officers whose votes are to be canvassed, and whose election is to be announced, could be already in office.

We think this view is sound, and more persuasive of the constitutional intent than the opposing argument of a contrary legislative interpretation as indicated by sections 1461 and 1570 of the Code of 1907. Section 1461 provides that the Governor, and other State officers, shall hold their offices "for the term of four years from the time of their installation in office, * * * such installation to take place *on the first Monday* after the second Tuesday in January next after their election." And section 1570 provides that "the succeeding officer is entitled to the salary for the day upon which he is inducted into office."

That legislative interpretation of doubtful constitutional provisions may be looked to and be entitled to much consideration has been declared by this court.— *Farrior v. N. E. M. S. Co.,* 88 Ala. 279, 7 South. 200. However, the force of these statutes in that aspect is much weakened in view of the fact that both of them existed prior to the Constitution of 1901, and were merely carried over into the Code of 1907, although section 1461 was then modified in general accord with the change made by the new Constitution.

Upon a full consideration of the arguments in favor of each of these views, and regardful of the force of the general rules of construction, we are of the opinion that section 116 of the Constitution, read in connection with sections 48 and 115, must be construed as fixing the terms of the Governor and other State officers therein named as beginning on Tuesday, and as not including the Monday from which the terms begin to run; and that the meaning is too plain to permit of alteration by legislative enactment or popular usage.

We therefore hold that Gov. Comer's term of office de jure expired at midnight on Monday, January 16, 1911; and consequently Gov. O'Neal's term de jure began on and with the Tuesday following.

3. By the Act of August 31, 1909, the term of the respondent Oberhaus as jury commissioner, under the appointment made by Gov. Comer, ran *"till* the first Monday after the second Tuesday in January, 1911."

Webster's New International Dictionary defines "till" as meaning in relation to time "up or down to; as far as; until." "The words 'to,' 'till,' and 'until' are synonymous, and are sometimes ambiguous and equivocal in the particular connection in which they occur in provisions for a period of time for the performance of an act, and are therefore construed as exclusive or inclusive according as the subject-matter about which they are used may show the intention in using the words to have been the one or the other."—*Conway v. Smith Merc. Co.*, 6 Wyo. 327, 44 Pac. 940, 49 L. R. A. 201, and case note, 202. "Primarily, the word ('until') is one of exclusion, but this construction must yield to a manifestly contrary intent, and the word bears an inclusive meaning when manifestly so intended."—29 A. & E. Ency. Law, note 3, pp. 352, 353.

In *Johnson v. State,* 141 Ala. 7, 37 South. 421, 109 Am. St. Rep. 17, the court held that, under a statute providing that a term of court should continue *until* a certain Saturday, that day was excluded from the term, by force of the general rule of construction. But in *Montgomery Traction Co. v. Knabe,* 158 Ala. 458, 48 South. 501, a case involving the identical point, the Johnson Case was overruled, and "until" was held to include the Saturday named; the reason being that universal usage had thus interpreted that and similar statutes.

Contrary to what seems to be the weight of authority elsewhere, this court has held that in an order allowing *until* a certain day for the signing of a bill of exceptions, "until" was exclusive of the day named.—*Richardson v. State,* 142 Ala. 12, 39 South. 12; *Heal v. State,* 40 South. 571.

Upon a fair survey of the authorities here and elsewhere, we hold that "till" means the same as "until," and that as marking the end of a period of time it must be construed as prima facie exclusive of the terminus ad quem; although this construction will always yield to a clearly contrary intent when shown in any legitimate way.

Applying this rule to the word "till" as used in the act of August 31, 1909, defining the terms of jury commissioners, we can discover no clear legislative intent to extend the term in question so as to include Monday, January 16. It therefore results that the term of the respondent Oberhaus, under his first-named appointment, expired at midnight of Sunday, January 15.

4. The act above referred to provides that "upon the expiration of each of these terms (of jury commissioners), the Governor shall appoint successors, who shall hold office for three years, from the expiration of the

term of office of their respective predecessors." This must be held to authorize the Governor, whoever he might be, to appoint the successor of Oberhaus at any time after the original term of Oberhaus fell in; and this latter event happened, as we have seen, at midnight of January 15th. If, therefore, Gov. Comer's term of office included Monday, January 16, 1911 (and we have seen that it did), he could, while he was serving as Governor on that day, appoint the successor of Oberhaus.

5. This being true, the question arises, could he validly appoint him a week in advance of that day, without express confirmation of the appointment on January 16th after the original term had actually expired?

We have carefully examined the authorities on this proposition, and, as there is no material conflict among them, it is not necessary to here reproduce their language or reasoning. They clearly settle the law to the effect that the appointing power cannot forestall the rights and prerogatives of its own successor by appointing successors to officers whose official terms expire contemporaneously with or after the expiration of the term of the appointing power; but where, by law or personal action, the office to be filled by appointment must become vacant by the expiration of the incumbent's term or by his withdrawal during the term of the appointing power, a prospective appointment thereto, if not forbidden by law, may be made at a convenient season before the actual expiration.—Mechem on Public Offices and Officers, § 133; Throop on Public Officers, § 92; 23 A. & E. Ency. Law, 347; 29 Cyc. 1373; *State ex rel. Morris v. Sullivan*, 81 Ohio St. 79, 90 N. E. 146, 26 L. R. A. (N. S.) 514, and note; *State ex rel. Whitney v. Van Buskirk*, 40 N. J. Law, 463; *State ex rel. Childs v. O'Leary*, 64

[Oberhaus v. State ex rel. McNamara.]

Minn. 207, 66 N. W. 264. And this we hold to be the law.

Nor do we conceive that it matters at all that the term of the appointing power projects beyond the term of the retiring officer by but a day or even the fraction of a day. We think, however, by way of distinction, that had Gov. O'Neal's term begun de jure *with* Monday, the 16th, a prospective appointment by Gov. Comer would have been invalid at least unless confirmed by him while holding over on the 16th. We might conjecture that the Legislature in framing the jury commission act intended to make the terms of the first of the series of commissioners synchronous with the Governor's term, so as to permit the incoming Governor to appoint their successors. If so, they failed to accomplish their design. But, by comparison with the act of the same Legislature in 1907, creating the State Tax Commission, and making their terms expire *on* the first Monday after the second Tuesday in January, 1911, we might equally conjecture that a difference was intended to be made in the appointing power.

It results from the foregoing views and conclusions that the respondent's answer to the writ showed that he was lawfully holding the office of jury commissioner of Mobile county, and the trial court erred in sustaining the relator's demurrers thereto.

Let the judgment be reversed and the cause remanded for further proceedings in accordance herewith.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.