162 So. 292

### STATE ex rel. FOSTER v. RICE.

#### 6 Div. 752.

Supreme Court of Alabama.

May 23, 1935.

Rehearing Denied June 27, 1935.

Tom B. Ward and J. Monroe Ward, both of Tuscaloosa, and Pettus & Fuller, of Selma, for appellant.

Steiner, Crum & Weil, of Montgomery, and Foster, Rice & Foster and J. G. Madison, all of Tuscaloosa, for appellee.

**ANDERSON, Chief Justice.**

Judge Brandon was elected probate judge in 1928 and was re-elected November 6, 1934, and the result of his election on said November 6, 1934, had been duly and legally declared. Brandon died December 6, 1934, before filing a bond and taking the oath of office, but he was making arrangements with a surety company for such bond which would have been given and filed December 18, 1934. On December 14, 1934, Gov. Miller, after receiving proof of the death of Judge Brandon, appointed the respondent, Fleetwood Rice, to said office.

That there was a vacancy in the office is beyond question, but as to which term the vacancy may be ascribed is of considerable importance in the settlement of the controversy here involved. Section 155 of the Constitution of 1901 fixes the term of judges of probate at six years, and section 158 deals with vacancies and the filling of same. So, the important question here is the determination of the beginning and ending of the term, and we think this question was definitely settled in the case of Prowell v. State ex rel. Hasty et al., 142 Ala. 80, 39 So. 164, 167. In this case it was held that the Prowell term, under and by virtue of the Constitution of 1901, was preserved and fixed and ended at the November election, 1904, at which Hasty was elected, making allowance, under the hold-over clause, of a few days between the election in 1904, for the ascertainment of the result and the qualification of Hasty. In other words, we held that "the Constitution and laws in existence at the time of appellant's election in 1898 fixed the termination of his term, and the commencement of that of his successor, at November, 1904. The Constitution of 1901 fixes the same term, and specifically provides for the same to terminate at the same time, which time in the previous Constitution and laws had been fixed as the first Tuesday after the first Monday in November." The effect of this holding was that Prowell's term ended and Hasty's began in November, 1904. This being the case, the holding over of Brandon after his election in November, 1934, was not an extension of the 1928 term which could not change or encroach upon the 1934 term, but was an exercise of the tenure under the hold-over clause in section 155 of the Constitution and his death created a vacancy, not in the 1928 term which had expired, but in the 1934 term which had commenced prior to his death. Maddox v. York, 21 Tex. Civ. App. 622, 54 S. W. 24 (affirmed 93 Tex. 275, 55 S. W. 1133); Olmstead v. Augustus, 112 Ky. 365, 65 S. W. 817. The provision in a Constitution or statute, when the term is fixed, for holding over until a successor is elected or appointed and qualifies, does not affect the cycle of the term fixed by law which ends at the expiration of the term. State ex rel. Hodges v. Amos, 101 Fla. 114, 133 So. 623. "The term of an office, as fixed in the Constitution or statute creating the office, is not to be confused with the tenure of an officer, and is not affected by the holding over of an incumbent beyond the expiration of the term for which he was appointed." State v. Young, 137 La. 102, 68 So. 241. To like effect is the holding of our own court. Prowell v. State ex rel. Hasty, supra; City Council of Montgomery v. Hughes, 65 Ala. 201; State ex rel. Covington v. Thompson, 142 Ala. 98, 38 So. 679.

We have not overlooked the citation, 46 C. J. 972, especially so much of the text as says: "But a vacancy in an office is not deemed to occur as a result of the death

of one elected to office before the beginning of the new term where deceased has not qualified and where the term of the incumbent is until a successor has qualified." This may be sound where there is no fixed term and the holding is to terminate upon the qualification of a successor, but here we have an officer duly elected and who dies after the commencement of the term for which he was elected, although he did not actually qualify before his death, though he had the right to do so.

As to section 2567 of the Code of 1923 fixing the term of officers therein named, there is no attempt to fix the term except "when not otherwise provided for by law." Here, the term of probate judges was provided for by the Constitution.

Section 9569 of the Code of 1923, first appearing in the Code of 1907 as section 5410, and in place of section 3354 of the Code of 1896, fixes the term of office of the judge of probate for "six years from the first Monday after the second Tuesday in January next after his election, and until his successor is elected and qualified." This was an unwarranted change of the term as fixed by the Constitution as it not only increased the existing term but materially changed the beginning and end of same. "Where the term of the officer is fixed by the constitution, the legislature can neither extend nor abridge it." Mechem on Public Officers and Offices, page 254, § 387, and cases cited in note 5.

Schedule No. 3 of the Constitution of 1901 as effectively fixes the commencement and end of the term of probate judges in November as does section 116 fix the commencement of the term of the Governor, and other officers therein named, as beginning on Monday after the second Tuesday in January. Suppose the Legislature should say the term of the Governor should begin in November or March, this court would not hesitate to declare such action violative of the Constitution, and if the Constitution fixed the term of probate judges as beginning in November, the Legislature would have no right to change the same to the first Monday after the second Tuesday in January. Clark v. State ex rel. Graves, 177 Ala. 188, 59 So. 259.

It may be conceded that many of the probate judges have acquiesced in and qualified in January as provided by section 9569, but custom, or even statutes, cannot override the plain and unambiguous mandate of our organic law.

Regardless of the many assignments of error, the respondent, under the undisputed facts, was rightfully holding the office under the first appointment of the Governor, and, as there was no vacancy when the second appointment was made, it was, of course, abortive. We hold that as the respondent, Rice's, appointment was for the present, or new term, he is entitled to hold same until the next general election occurring at least six months after his appointment and at which time a successor will be elected for the remainder of the Brandon 1934 term. This is, of course, quite a different case from McDonnell v. State, ex rel. Jones, 199 Ala. 240, 74 So. 349.

The judgment of the circuit court is affirmed.

Affirmed.

GARDNER, BOULDIN, BROWN, FOSTER, and KNIGHT, JJ., concur in the result, but for reasons set out in the opinion which follows.

THOMAS, J., dissents.

The majority of the court, consisting of Justices GARDNER, BOULDIN, BROWN, FOSTER, and KNIGHT, give expression to their views in the following opinion:

PER CURIAM.

Because of the importance of the question, we deem it proper that this court give definite expression to its views on the constitutionality of Code, § 2567, providing that constitutional officers in the judicial department "shall hold their respective offices for the term of six years from the first Monday after the second Tuesday in January next after their election, and until their successors are elected and qualified."

The contention is that such statute is violative of section 155 of the Constitution, providing that they shall hold office "for the term of six years, and until their successors are elected or appointed, and qualified."

The cases of City Council of Montgomery v. Hughes, 65 Ala. 201, and Prowell v. State ex rel. Hasty et al., 142 Ala. 80, 39 So. 164, 166, are relied upon to support such contention.

The holding of these cases touching the meaning of the "hold-over" clause in section 155, and the corresponding section of

612

the Constitution of 1875 (see parallel sec. 15, Code of 1923, page 332), is summarized in the following excerpt from the Hasty Case, supra: "We regard it as the settled law of this state that the words 'until his successor is elected and qualified' were never intended to prolong the term of office beyond a reasonable time after the election, to enable the newly elected officer to qualify. City Council of Montgomery v. Hughes, 65 Ala. 201, 206, 207; Chelmsford Co. v. Demarest, 7 Gray [73 Mass.] 1."

In the Hughes Case, supra, it was sought to hold the sureties on the bond of the city clerk of Montgomery liable for the misfeasance of the clerk for a hold-over term of two years; and in the Hasty Case the incumbent sought to hold over for a year, on the ground that his successor elect, under the statute then obtaining could not take office until Tuesday after the first Monday in November following his election. By change in date of election, the successor had not been elected until later than Tuesday after the first Monday in November, 1904, and the incumbent insisted he could not take office until November, 1905, and that he, the incumbent, was entitled to hold over to the latter date.

In effect the Hasty Case does hold that the Legislature cannot postpone the date upon which the probate judge elect shall enter upon the duties and reap the emoluments of his office for an indefinite and unreasonable time after his election.

We do not question the rule of the cases mentioned. They do not hold that the fixing of a day certain upon which the six-year term shall begin is not a matter for legislative action. The Constitution does not fix such date. The election laws in force throughout our history have fixed the date for holding the election, a later date for canvassing returns, a later date to certify the result from the counties to the central authority, a later date for the central authorities to canvass the full returns, and a later date for certificates of election to be issued to the officers elect, and, finally, where bonds are required, as in the case of the judge of probate, a period of forty days to file a bond.

Likewise, the statutes have from time to time specified the date on which the term shall begin, and the prior term shall end.

It is sufficient, in this regard, to note that in the Hasty Case the court recognizes the end of the term of the incumbent as fixed by the Act of 1876–77 (Acts 1876–77, p. 103), § 8, conforming to schedule 3 of the Constitution of 1875. Under that Constitution the date of general elections was changed from November to August. Judicial officers elected in August did not enter upon their terms until November, some three months after election. Here is a constitutional precedent as to reasonable time between date of election and date of entry into office. The Constitution of 1901, § 116, fixes the date on which the Governor and executive officers elect shall go into office. The statute here in question, first appearing in the Code of 1907, enacted probably to cure the uncertainties brought out in the Hasty Case, supra, fixes the same date for judicial officers to go into office, which the Constitution fixes for executive officers elected at the same time. Another precedent as to reasonable time.

Section 156 of the Constitution empowers the Legislature to change the date of the election of judicial officers. At the same time it safeguards the term of office of the incumbent at the time of such change. It results, as of course, that the Legislature is thus empowered to increase or decrease the interim between their election and entry into office. The Constitution is jealous of the term of office, assures a full term, but does not specify when the term begins. The only officers elect specially interested in the question were those elected, if any, before the statute was enacted. The uniform observance of same for more than a quarter of a century indicates that subsequent officers elect have had the statute in mind when seeking the office.

Without prolonging the discussion, we are of opinion and so hold that section 2567 of the Code is constitutional and valid, and now fixes the date on which the six-year terms of judicial officers elect shall begin; which also fixes the date when the ensuing term shall end.

The hold-over period after that date, in case no one appears, duly qualified, to enter upon the office, it is unnecessary to consider.

Justice THOMAS concurs in this feature of the majority opinion.

Other arguments advanced as to respondent's title to the office by reason of his first appointment may be here laid aside as unnecessary to be determined. This in view of the conclusion reached that, con-

ceding, without deciding, that under respondent's first appointment his term of office ended in January, 1935, his title is established under Gov. Miller's second appointment, which is decisive of the case.

In State ex rel. Harris v. Tucker, 54 Ala. 205, this court, in an opinion by Justice Stone (afterwards Chief Justice), construed and applied section 164, Code of 1867, which is section 2610 of our present Code. The holding was in effect that a failure of one duly elected to office to file the necessary bond within the time required by law creates a vacancy in the office to which he was elected, and that upon the proper certification of such fact to the appointing power, the duty devolved upon the latter to fill the vacancy as in other cases, just as the statute in express language requires. And any expression or holding in previous decisions (Sprowl v. Lawrence, 33 Ala. 674, and State v. Ely, 43 Ala. 568) to the effect that any judicial investigation was a prerequisite to such certification or appointment was expressly disapproved, the court saying: "Failure to file, under section 164, and failure to give, under section 177, Revised Code, each alike 'vacates the office.'"

This statute has been re-enacted, without substantial change, in this respect, and must be viewed in the light of the construction so given it in State ex rel. Harris v. Tucker, supra.

Judge Brandon died on December 6, 1934, without having qualified for the office to which he had been elected, and on December 19, 1934, the clerk of the circuit court certified to Gov. Miller that Judge Brandon had not filed in the office of said clerk of Tuscaloosa county the official bond required by law for the term to which he had been elected in November. Thereafter, on January 5, 1935, Gov. Miller appointed respondent to the office of probate judge, and after said appointment, and before January 9, 1935, respondent (without waiving any right to the office under his prior appointment) duly accepted and qualified for such office as required by law, and on said latter date a commission was duly issued to him.

 Under the undisputed and agreed facts, the law as to qualification for office was not complied with, for there was a failure to file a bond within the time fixed by law. True, there was no dereliction of duty, nor negligence in this regard, on the part of Judge Brandon. He died before the expiration of the time for filing his bond, and his failure in this respect was due to no fault of his own, but to all-wise Providence. But, nevertheless, there was a failure to file a bond, and the certification under section 2610 of the Code stated an obvious fact. The statute makes no reference to any cause for such failure, and, as observed in State ex rel. Harris v. Tucker, supra, "failure to file * * * 'vacates the office.'"

The language is plain, emphatic, and comprehensive. It includes all cases of "failure to file," and no previous judicial investigation is necessary for certification or appointment. State ex rel. Harris v. Tucker, supra.

A simple illustration will suffice. If one duly elected is so stricken by disease, either in mind or body, so that the execution of a bond is impossible, and for such reason there is a failure to file a bond within the time required by law, can it be seriously questioned that upon the certification of such failure the appointive power could immediately proceed to fill the vacancy thus created? The evident purpose of the statute is to have some one ready to take the office, as it is well understood that "the law abhors vacancies in public offices, and great precautions are taken to avoid their occurrence." Prowell v. State ex rel. Hasty, supra.

Between the illustrated case and the present, there can be no distinction in principle. In neither instance was the elected officer at fault, yet there was a clear failure to file the bond. The statute speaks not of causes, but of effect. Though the question does not appear to have been previously here presented, yet it has been considered in other jurisdictions (see Gibbs v. People, 66 Colo. 414, 182 P. 894, and People v. DeGuelle, 47 Colo. 13, 105 P. 1110, 1113, where the holding was that a failure to qualify created a vacancy in the office, though the power to qualify "was ended by death." In the DeGuelle Case, supra, was the following observation: "True, as said in State v. Hopkins, 10 Ohio St. 509, 511: 'This failure was caused by the act of God, and not by the laches of the party; but its effect upon the office is the same whatever may have been its cause.'" The opinion in that case concludes as follows: "That an appointee to fill a vacancy under our law holds until the next general election, if no new term intervenes between the time of his appointment and the time of such elec-

tion; but, if a new term commences during the interval, the term of the appointee ends, and the one entitled to the new term has a right thereto; but if such one on the arrival of the term does not appear and qualify, though the reason thereof be death, there is a vacancy in the office for the term. That until an appointment is made the incumbent of the previous term holds over; but when an appointment is made, and the appointee qualifies, the previous term and the rights of the incumbent to the office are ended."

We are persuaded, therefore, that the certification of a failure to file bond was justified under. section 2610, and that by virtue of said statute a vacancy existed to be filled by the appointing power—the Governor. State ex rel. Harris v. Tucker, supra.

 Judge Brandon had been elected to the office of judge of probate in the November election, his term to begin in January, 1935. He and he alone had the inchoate right to become the actual incumbent of the office for the term beginning in January. He could have qualified prior to the date of his death. Had he duly qualified for the office, and then died, it would seem clear that a vacancy would have been created for the new term, subject to be filled by the Governor. A like result is reached upon his failure to qualify, and the certification thereof as provided by section 2610 of the Code. This vacancy occurred, therefore, during Gov. Miller's term. The statute prescribes that the vacancy be filled by the appointing power, and that power was Gov. Miller.

"The general rule is that a prospective appointment to fill a vacancy sure to occur in a public office made by an officer who * * * is empowered to fill the vacancy when it arises, is, in the absence of a law forbidding it, a valid appointment, and vests title to the office in the appointee." 46 Corpus Juris 952.

This rule was recognized by this court in Oberhaus v. State, 173 Ala. 483, 55 So. 898, 902, where it was said: "But where, by law or personal action, the office to be filled by appointment must become vacant by the expiration of the incumbent's term or by his withdrawal during the term of the appointing power, a prospective appointment thereto, if not forbidden by law, may be made at a convenient season before the actual expiration."

We are at the conclusion, therefore, that Gov. Miller properly exercised his appointive power when he appointed respondent on January 5, 1935, and that under the commission issued January 9, 1935, respondent, Rice, has the right to hold the office during the new term, to which Judge Brandon had been elected, and until the next general election.

For the reasons herein indicated, we are of the opinion the trial court correctly ruled, and that the judgment should be here affirmed.

THOMAS, Justice (dissenting).

The salient facts may be briefly stated as follows:

Judge W. W. Brandon held the office of probate judge of Tuscaloosa county, and filling that office when the general election occurred in 1934 was the successful candidate to succeed himself. He died after the election and within an incumbency in office, and without qualification for the succeeding term which began in January, 1935; his failure of qualification being by reason of his death prior to the beginning of the new term to which he was elected in succession. His incumbent term did not expire until after the first Monday after the second Tuesday in January next after the election, as fixed by the statute, in the absence of any constitutional interdiction to the contrary. Section 116, Constitution 1901; sections 2567, 9569, Code; 22 R. C. L., page 550.

It has been held, as to the words of this statute, that judicial officers shall hold their respective offices for the prescribed terms until their successors are elected and qualified; that this provision was only intended to prolong the term of incumbency in office until a reasonable time after the expiration of the term in question to enable the newly elected officer to duly qualify, and was not intended to make the office one of indefinite duration. Section 2584, Code; Prowell v. State ex rel. Hasty et al., 142 Ala. 80, 39 So. 164; City Council of Montgomery v. Hughes et al., 65 Ala. 201; Baker et al. v. State ex rel. Green et al., 222 Ala. 467, 133 So. 291.

It is further provided that after a reasonable time has elapsed and the new or succeeding officer or incumbent in office fails to qualify, that office becomes vacant. It would follow from this that such office cannot become vacant, in the sense dealt with here, before the time for a law-

ful incumbency in that office has expired. Clark v. State ex rel. Graves, 177 Ala. 188, 59 So. 259; State ex rel. Hodges v. Amos, State Comptroller, 101 Fla. 114, 133 So. 623.

The non hold-over policy of this state is declared in our well-considered cases (Prowell v. State ex rel. Hasty et al., supra); and it is likewise established that the appointing power cannot forestall the rights and prerogatives of its own successor by appointing successors to office whose terms do not expire contemporaneous with or after expiration of the term of the appointing power (Oberhaus v. State ex rel. McNamara, 173 Ala. 483, 55 So. 898; Roberts v. State ex rel. Bailey et al., 228 Ala. 222, 153 So. 432).

The rule stated in this jurisdiction is that unless some other time is fixed for the beginning of an elective term of office, the general presumption is that the official term dates from the legal ascertainment and declaration of the result of the election, and the officer may assume the duties of the office as soon thereafter as he can qualify and receive his commission. Prowell v. State ex rel. Hasty et al., 142 Ala. 80, 39 So. 164.

The converse of this situation is further declared by well-considered general authorities, to the effect that where the length or expiration of the term of public office is not fixed by law, that interpretation of the statute which limits the term of office to the shortest time allowed by law should and will be adopted. State ex rel. Birrell v. Speak, 124 Ohio St. 636, 180 N. E. 264, 80 A. L. R. 1286, 1290, 1292.

The phase of the subject for decision—the fixation of the term of office under the statute and Constitution—will be considered later. 46 C. J., pages 964, 965; Thompson v. Holt, 52 Ala. 491.

The Constitution only confers upon the Governor the power to appoint officers of the class under consideration, where there is a vacancy, and a vacancy in office can only exist where there is an office to be presently exercised by a lawful incumbent and there is no incumbent to exercise and discharge its duties and functions. When an appointment is made under the law, that appointment, unless otherwise prescribed by law, must be coterminous with the vacated term of the incumbent, for that the Governor has no power to do more than fill a vacancy in the term of that office.

Prior to January 14, 1935, there was no office extending beyond the date of expiration of the term of Gov. Miller and the beginning of that of Gov. Graves that could be presently exercised, except as a mere incident to the office that terminated on January 14, 1935. Until there was an office that could be presently exercised for a part of a term, commencing on the date indicated in January, 1935, there was, nor could be, no vacancy in that office that could then be filled by the Governor. It follows that without such vacancy in office Gov. Miller had no power to appoint as and when he did on the occasion indicated by the record.

It is noted in section 155 of the Constitution, as to the terms of office of judges, that "except as otherwise provided in this article, the chief justice and associate justices of the supreme court, circuit judges, chancellors, and judges of probate, shall hold office for the term of six years, and until their successors are elected or appointed, and qualified; and the right of such judges and chancellors to hold their offices for the full term hereby prescribed shall not be affected by any change hereafter made by law in any circuit, division, or county, or in the mode or time of election."

And section 158 of the Constitution provides that "vacancies in the office of any of the justices of the supreme court, or judges who hold office by election, or chancellors of this state, shall be filled by appointment by the governor. The appointee shall hold his office until the next general election for any state officer held at least six months after the vacancy occurs, and until his successor is elected and qualified; the successor chosen at such election shall hold office for the unexpired term and until his successor is elected and qualified."

The provisions of the Constitution limiting the terms of office to the time when such successor may be appointed and qualified (section 155 Constitution) clearly contemplate cases where the prior term of office is terminated by appointment and the qualification of the appointee; and, as there is no provision for such appointment, except in case of death, etc. (prior to the expiration of the term in question), of the person elected to fill a succeeding term, the Constitution, necessarily, contemplates that the preceding term shall be terminated by the appointment in cases of that kind.

It seems clear that the appointment made by Gov. Miller was for a term that is to be terminated by an appointment (by Gov. Graves) to fill the vacancy that will and did result in the subsequent terms by the death of Judge Brandon and his failure of qualification from such cause.

A question to counsel by one of the justices on oral argument suggests that the foregoing general statement by the writer be illustrated as follows:

If A (Brandon) was the presiding judge of probate, and B (whoever he may be other than Brandon) was elected for the succeeding term, and both A and B had died, on different days, prior to the expiration of A's (Brandon's) term, it would clearly be the duty and power of the Governor to fill the vacancy caused by the death of A in office, and the term of such appointee would have been for the remaining portion of that term expiring in January, 1935, and until the appointment to fill the vacancy caused by B's death was made and the appointee qualified. It is obvious that the fact that the same person (Brandon here) filled, or was to' fill both offices (one to which he was qualified and that to which he was elected at the last general election in 1934), in the opinion of the writer, can make no difference in the situation under the facts and law that gov'erns.

At this point of the consideration of a vacancy in such office, the writer takes a retrospective view in order to construe the last announcement of this court on the subject and to understand the several provisions of our organic law as to the term of office and the filling of vacancies.

Section 11 of article 6 of the Constitution of 1868 provided for the filling .of "vacancies in office" as follows: "Vacancies in the office of the Circuit Judge, Judge of Probate, or Judge of any other inferior court established by law, shall be filled by the Governor; and the person appointed by him shall hold office until the next election day appointed by law for election of Judge, and until his successor shall have been elected and qualified."

And section 12 provided that "the Judges of the several Courts of this State shall hold their office for the term of six years."

It will be noted that in the Constitution of 1868 there was no provision for the termination of a preceding term by an appointment to fill a vacancy in a succeeding term, caused by the death, prior to the commencement of his term, of the person elected as judge. And section 12 of article 6 of the Constitution of 1868 seems to have been amended by section 15 of article 6 of the Constitution of 1875, and by section 155 of the Constitution of 1901, with a view to remedying this defect. That is, section 12 of article 6 (Constitution 1868) provided that the term of judges should be for six years only, while section 11 provided that the Governor should fill vacancies by appointment, and that the office of the appointee should extend to the next election and until a successor was elected and qualified. There was no provision for the termination of the existing term of office by appointment of a successor and his qualification, as we have indicated, and it was to remedy this deficiency that section 12 (article 6, Const. 1868) was amended by section 15 of article 6, Constitution 1875, and section 155 of the Constitution' of 1901, the latter section providing for the termination of the term of office by appointment and qualification of the successor. The case of McDonnell v. State ex rel. Jones, 199 Ala. 240, 74 So. 349, supports this view.

It will be noted that it is provided by section 155 of the Constitution of 1901 that judges shall hold office for the term of six years, and until their successors are elected or appointed, and qualified; and we have indicated that no such provision was contained in the Constitution of 1868 (section 12, article 6). However, the last Constitution (1901). does not in section 155, or any other section, provide or require the time of the beginning of the term of office of such judges. The matter is left to the Legislature, and that body had the power and did fix the time for the beginning of the six-year terms of such judges.

The Act of 1903 (General Acts 1903, p. 493, § 1) fixed the term of judges at "six years from the 10th day of November of the year of their election," and this term was later changed to "six years from the first Monday after the second Tuesday in January next after their election." Section 1463, Code 1907; section 2567, Code of 1923.

We have indicated that in the absence of limitation of power of the Legislature to fix the time for the beginning of the term of office of judges, the provisions of section 155 of the Constitution ex vi ter

mini made the term "six years from the first Monday after the second Tuesday in January next after their election, and until their successors are elected [or appointted] and qualified." Sections 2567, 9569, Code.

The term of Governor indicated in section 116 of the Constitution 1901 is "four years from the first Monday after the second Tuesday in January next succeeding [his] election, and until [his] successors shall be elected and qualified." Those of the justices of the Supreme Court are fixed at six years to be chosen at a time fixed by law, and the Legislature may change the time of holding elections. Section 156, Const. 1901.

By section 149 of the Constitution the Legislature has the power to establish courts of probate.

Section 152 of the Constitution provides that justices of this court, judges of the circuit courts, judges of probate courts, and chancellors shall be elected "at such times as may be prescribed at law, except as * * * otherwise provided" in the Constitution.

The terms of judicial officers as indicated in the Constitution and in the statutes conclude with like words (sections 116, 142, 158, Const.; sections 2567, 9569, Code); thus the terms of Governor and judges of probate expired at the same time in 1935.

Schedule No. 3 of the Constitution did not fix terms of office providing only for incumbents in office.

The phraseology in the two sections of the Constitution (sections 155, 158) was correctly disposed of by Mr. Chief Justice Anderson in McDonnell v. State ex rel. Jones, 199 Ala. 240, 74 So. 349, 350. He declared the provisions of section 158 were plain and unambiguous and dealt only with vacancies and the method of filling same, and "cannot be so reasonably construed as to change, alter, or extend the term as fixed by section 155 [of the Constitution]" (six years); that it matters not how many vacancies occur, or when they occur within the six-year unexpired term, the appointee thereunder can in no event hold beyond the election and qualification of his successor. He concludes the matter as follows: "The Lawler term began with his election in November, 1910, and his qualification thereunder and extended to the election and qualification of a successor at the November election in 1916, and it matters not how many vacancies

occurred, or when they occurred in the Lawler term, 1910 to 1916, the appointee thereunder could, in no event, hold beyond the election and qualification of the relator Jones, who was elected at the November election, 1916. We think that it is so plain and manifest that section 158 deals only with vacancies and unexpired terms that there is little left for interpretation, and that resort to authorities of other States is not necessary." 199 Ala. 240, 241, 74 So. 349, 350.

It would appear, as stated, that under the Constitution and statutes the six-year term of office and vacancies that occur or may occur therein were dealt with and declared to begin only on expiration of Brandon's term, in which he was the incumbent, and that term expired on January 14, 1935. That is, the Constitution not fixing the beginning of the term, and the Legislature within its right having done so, it follows that the part of the term that Brandon was serving at his death was the unexpired term filled by Gov. Miller's appointee. Such is the result, if it be borne in mind that the statute fixed the term within the grant of the Constitution, and should it be further borne in mind that section 158 of the Constitution was providing for appointment to vacancies for and within unexpired terms. State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477; Clark v. State ex rel. Graves, 177 Ala. 188, 59 So. 259.

The facts of the McDonnell Case, supra, are very similar to the facts of the case before us. There, Judge McDonnell contended for the office for the unexpired term of Lawler, and until his successor had been elected and qualified in the general election, and invoked like construction of section 158 as now insisted upon.

This court properly held that McDonnell's appointment was limited to the unexpired term of Judge Lawler, and did not extend into the new term of office of the judge of probate of the county in question. It is insisted that since Judge Jones was elected and not appointed, the McDonnell Case is not the rule of this case.

A careful consideration of sections 155 and 158 of the Constitution is convincing to the writer that the expression "until his successor is elected and qualified" (section 158) should not be given a different construction where the contest is with an elected rather than an appointed contender; it should be given the same meaning in all cases, as we illustrated at the outset.

The result· is not different under the insistence that the provisions of section 2610 of the Code be considered. This statute comes unchanged from 'the Code of 1852, with its provisions that the failure to file bond within the time fixed by law vacates the office, and that the appointing power must fill the vacancy as in other cases. The latter provision has application only when there is a term of office in which there is a vacancy by reason of such failure. When this statute was adopted and has been construed, no appreciable time elapsed between the declaration of election, the required qualification to be filed, and the assumption of that· office.

In the case of State ex rel. Harris v. Tucker, 54 Ala. 205, where the earlier cases are reviewed, the sheriff was elected in November, the result declared and his bond tendered and refused as insufficient; notice of refusal certified to the Governor, and his successor appointed—all done within the four-year term of that office. That is, in that case the actual vacancy in office was dealt with and considered under materially different circumstances, Constitution, and statutes from those which now exist and obtain. Judge Stone indicated in his decision the lack of any statute to investigate and contest the controverted bond or the sufficiency vel non of the bond tendered by the official-elect and declined of approval. He rested that decision on the observation that "no machinery whatever is provided by law for a judicial investigation of the question of failure to execute or renew official bonds," and declared that the decisions in Sprowl v. Lawrence, 33 Ala. 674, and State ex rel. v. Ely, Judge, etc., 43 Ala. 568, "are each erroneous expositions .of the statutes, so far as they seem to require, in the given cases, judicial ascertainment of the vacancy before the appointment of a successor can be made." Such was the basis of discussion of the statute under the Constitution of 1868, §§ 11 and 12, article 6, fixing the term of office from the declaration of the result of the general election in November. In each of the. cases considered by Judge Stone there were statutory failures to qualify to office, or to give while in office the required additional bond (for reasons other than death in office). Such failures were within the term of the office, and required incumbency therein; in the case of an actual vacancy, and not that of a prospective vacancy in office of a succeeding term.·

In Yarbrough et al. v. Hightower et al., 211 Ala. 262, 263, 100 So. 126, the statute was adverted to and held that a tax collector failing to file bond within the time required by law was, nevertheless, a de jure collector and was removed by the general revenue law from the operation of section 1495 of the Code of 1907, § 2607, Code of 1923. The court said:

"The failure tò file the bond within the time fixed by law vacated the office. Code 1907, § 1498. On this premise it is argued that Robison vacated and lost all right to the office, that his subsequent assumption of the duties of the office was wrongful, a mere usurpation; that his bond was not a statutory bond and created no lien on his property, unless by way of estoppel in favor of the state and county; that the sureties were joint wrongdoers in executing a bond in aid of the usurpation of a public office; that their loss resulted from their own wrong, and hence·they do not come into equity with clean hands.

"We need not pass upon the soundness of this position for the following reasons:

"Section 2160, Code 1907, codifying Acts 1903, p. 370, made the term of office of the tax collector to begin on the first day of August next after his election.

"Section 2161, Code 1907, as amended by the Code committee, required his bond to be filed on or before the first day of July next after his election.

"The General Revenue Law of 1915 (Acts 1915, p. 386) re-enacted and amended section 2160, Code 1907, so as to make the term of office of the tax collector begin on the first day of October next after his election, and extend the terms of those in office to October 1, 1917. Gen. Acts 1915, § 143, p. 447. Section 2161, Code 1907, was also re-enacted and amended so as to require the bond of the tax collector to be filed on or before the first day of September next after his election. Gen. Acts 1915, § 144, p. 447. These statutes remove the tax collector's bond from the provisions of section 1495, Code 1907."

Thus the term of office and his incumbency therein were held important and determining factors.

In Head v. Hood, 214 Ala. 353, 355, 107 So. 854, 855, the petition was for mandamus by an alleged superintendent of education elect against the prior incumbent, where there had been an election, certification, and an official bond tendered and

approved, and the term of office entered upon. This court observed that "the scope of these statutory provisions [sections 2683, 2684, Code of 1923], and the nature and limitations of the issues raised by a proceeding thereunder, were fully discussed and settled in the case of Thompson v. Holt, 52 Ala. 502, and the conclusions of law there stated were reaffirmed and applied in Chambers v. Stringer, 62 Ala. 596." Mr. Justice Somerville observed that so far as advised, this is the only provision of law for the automatic vacation of office by default of the officer elect, with respect to the qualifying acts required of him before his assumption of official duties; that "except where that result is declared by a statute, it has been held by this court that such a default does not ipso facto vacate the office, though it would be a ground for removal in a proper proceeding. Sprowl v. Lawrence, 33 Ala. 674, 689"; that. "if the state board of education, through its executive officer, the state superintendent, had certified that the petitioner had failed to file a certified copy of his official bond in the office of the state board, as required by law, such a certificate would have authorized the county board to proceed to fill the apparent vacancy, and the record evidence of that appointment would have been prima facie evidence of the appointee's title to the office, supervening the apparent antecedent title of the petitioner, and, in this proceeding, superior thereto. But the certificate or declaration of vacancy relied on by respondent does not emanate from the state board of education; nor does the alleged educational disqualification of the petitioner, upon which the declaration of vacancy is based, operate ipso facto as a vacation of the office by him. Very clearly, therefore, the principle declared in Plowman v. Thornton, 52 Ala. 559, is not available to respondent in this case."

In State ex rel. Gunn v. Argo, 227 Ala. 657, 151 So. 844, 845, the effort was to remove the tax collector from office for insufficiency of bond by reason of the failure of the surety company and proceedings to require a new bond. A new bond was not accepted and approved until after the institution of the instant proceedings; held under circumstances of that case there was no abandonment of the office which would justify his removal; that "this record conclusively shows respondent was tenaciously holding on to it and endeavoring in every manner possible to remove any obstacle to a clear title thereto. The receivership of the surety on respondent's original bond did not operate as an automatic vacation of the office. · To that end the above-noted statute, or possibly some judicial proceeding, was necessary. Head v. Hood, 214 Ala. 353, 107 So. 854. The notice given respondent was fatally defective, if, indeed, it was intended as a compliance with this statute. We conclude no waiver of its essential details appears. Nor has there been any abandonment of the office." The notice given in that case was: "In a written communication to Argo, bearing date January 20, 1933, the county commission for Walker county, calling attention to said receivership, 'requested' that he 'forthwith file another bond.' A new bond was not accepted and approved until after the institution of these proceedings, though tendered a short time previously."

We have no case of the failure of qualification by reason of the death of the official elect, or that of death certified before the term of office began.

In State ex rel. Freeman v. Carvey, 175 Iowa, 344, 154 N. W. 931, the decision was that where the incumbent of an office, reelected for a succeeding term, dies before the beginning of such term, there is a vacancy in the term he was serving, but not in the term upon which he had not yet entered; that where one is appointed to office to fill a vacancy, and there is a further vacancy in the ensuing term, before he may hold over, he must qualify anew for the second term.

In People ex rel. Callaway v. De Guelle, 47 Colo. 13, 105 P. 1110, 1113, 1114, the court held: "That an appointee to fill a vacancy under our law holds until the next general election, if no new term intervenes between the time of his appointment and the time of such election.; but, if a new term commences during the interval, the term of the appointee ends, and the one entitled to the new term has a right thereto; but if such one on the arrival of the term does not appear and qualify, though the reason thereof be death, there is a vacancy in the office for the term. That until an appointment is made the incumbent of the previous term holds over; but when an appointment is made, and the appointee qualifies, the previous term and the rights of the incumbent to the office are ended."

It follows that the appointment of Judge Rice should be limited to the unexpired

term of Judge Brandon that came to an end on January 14, 1935, and that thereafter the vacancy in office existing was properly filled by Gov. Graves in his appointment of Foster.

I therefore respectfully dissent.